Egan Jr., J.
Appeal from a judgment of the County Court of Otsego County (Lambert, J.), rendered April 3, 2012, upon a verdict convicting defendant of the crime of sexual abuse in the first degree (two counts).
Defendant was indicted and charged with three counts of sexual abuse in the first degree based upon allegations that he engaged in inappropriate touching with victim A (born in November 2001) on or about October 2, 2010 and engaged in similar conduct with respect to victim B (born in October 1999) on September 5, 2010 and October 18, 2010. Victim A spontaneously disclosed the inappropriate touching to her mother on the morning following the October 2010 incident; victim B revealed the subject incidents in response to questioning by her mother, which, in turn, was prompted by the mother’s discovery of the allegations made against defendant regarding victim A. As a result of the manner in which victim B’s disclosure came to light, defendant included—as part of his pretrial omnibus motion—a request for a “taint” hearing to determine whether victim B’s testimony had been contaminated by her mother’s questioning. Defendant also moved, insofar as is relevant here, to sever the counts of the indictment pursuant to CPL 200.20 (3). County Court denied both of these applications.
Following a jury trial, at which victims A and B, among others, appeared and testified, the jury found defendant guilty of two counts of sexual abuse in the first degree—pertaining to the October 2010 incident regarding victim A and the September 2010 incident regarding victim B—and not guilty of the remaining count. Defendant thereafter was sentenced upon each count to a prison term of seven years followed by five years of post-release supervision—said sentences to run consecutively. This appeal by defendant ensued.
We affirm. Initially, we reject defendant’s assertion that County Court abused its discretion in denying his motion to sever the counts of the indictment. Although charges arising out of different criminal transactions are properly joinable where, as here, “such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law” (CPL 200.20 [2] [c]; see People v Raucci, 109 AD3d 109, 117 [2013], lv denied 22 NY3d 1158 [2014]; People v Rogers, 94 AD3d 1246, 1248 [2012], lv denied 19 NY3d 977 [2012]; People v Hunt, 39 AD3d 961, 962 [2007], lv denied 9 NY3d 845 [2007]; People v Reome, 309 AD2d 1067, 1068 [2003], lv denied *1168 2 NY3d 805 [2004]), a court nonetheless may—“in the interest of justice and for good cause shown”—exercise its discretion and order that such offenses be tried separately (CPL 200.20 [3]; see People v Pirillo, 78 AD3d 1424, 1425 [2010]; People v Reome, 309 AD2d at 1068). Good cause, in turn, may be established by demonstrating, among other things, that there is “[substantially more proof on one or more such joinable offenses than on others and there is a substantial likelihood that the jury would be unable to consider separately the proof as it relates to each offense” (CPL 200.20 [3] [a]; accord People v Reome, 309 AD2d at 1068; see People v Cox, 298 AD2d 461, 461 [2002], lv denied 99 NY2d 581 [2003]). Simply put, defendant failed to make such a showing here.
As a starting point, defendant’s motion merely asserted—in an entirely conclusory fashion—that “there [might] be substantially more proof with respect to one complainant than the other.” This unsubstantiated assertion was belied by the subsequent proof at trial, where the quantum of evidence adduced as to each victim proved to be substantially similar. More to the point, the evidence as to each victim was “separately presented, uncomplicated and easily distinguishable” (People v Lakatosz, 59 AD3d 813, 815 [2009], lv denied 12 NY3d 917 [2009] [internal quotation marks and citation omitted]; accord People v Nickel, 14 AD3d 869, 870 [2005], lv denied 4 NY3d 834 [2005]), and the fact that the jury acquitted defendant of one of the counts of the indictment while convicting him of the remaining counts demonstrated the jury’s ability to separately consider and evaluate the proof as to each of the victims/incidents (see People v Hunt, 39 AD3d at 962; People v Davis, 19 AD3d 1007, 1007 [2005]; People v Nickel, 14 AD3d at 870; People v Reome, 309 AD2d at 1068; People v Boyea, 222 AD2d 937, 939 [1995], lv denied 88 NY2d 934 [1996]). Under these circumstances, County Court did not abuse its discretion in denying defendant’s motion to sever.
We reach a similar conclusion with respect to the requested taint hearing. Notwithstanding the absence of “express statutory authority for a hearing to determine whether the testimony of [a] child witness [ ] has been tainted by suggestive interviewing techniques,” a court nonetheless may—“[u]pon a proper showing” by the defendant—direct that a pretrial taint hearing be held (People v Nickel, 14 AD3d at 870-871). Noticeably absent from defendant’s motion papers was any indication that victim B’s mother engaged in leading or otherwise suggestive questioning of victim B regarding any inappropriate contact that she may have had with defendant. Moreover, “any suggestibility, *1169 the manner of questioning and its effects on [victim B’s] testimony could be, and was, addressed on cross-examination of [victim B and her mother]” at trial (id. at 871; see People v Weber, 25 AD3d 919, 923 [2006], lv denied 6 NY3d 839 [2006]). Accordingly, County Court did not abuse its discretion in denying defendant’s request for a pretrial taint hearing (see People v Pulvino, 115 AD3d 1220, 1222 [2014]; People v Thompson, 59 AD3d 1115, 1116 [2009], lv denied 12 NY3d 860 [2009]; People v Kemp, 251 AD2d 1072, 1072-1073 [1998], lv denied 92 NY2d 900 [1998]; cf. People v Montalvo, 34 AD3d 600, 601 [2006], lv denied 8 NY3d 883 [2007]).
Defendant’s assertion that the convictions are against the weight of the evidence is equally unpersuasive. Insofar as is relevant here, a person is guilty of sexual abuse in the first degree “when he or she subjects another person to sexual contact . . . [w]hen the other person is less than [11] years old” (Penal Law § 130.65 [3]). Sexual contact, in turn, is defined as “any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party,” which “includes . . . the touching of the victim by the actor, whether directly or through clothing” (Penal Law § 130.00 [3]). In this regard, “the case law makes clear that [a]n inference of sexual gratification may be drawn from the conduct of a defendant who has intimate contact with a child to whom he or she is not related” (People v Brown, 114 AD3d 1017, 1018 [2014] [internal quotation marks and citation omitted]).
The record established that, in October 2010, victim A resided with her mother, her mother’s now ex-boyfriend and the ex-boyfriend’s two sons. On the night in question, defendant attended a birthday party for the ex-boyfriend at victim A’s residence and was observed watching television with all four children in the bedroom occupied by victim A and her sister. At the end of the evening, victim A and her sister went to sleep in their shared bedroom, while defendant and another male family friend, both of whom apparently were too intoxicated to drive to their respective homes, spent the night in the living room of the residence. Victim A testified that, at some point during the night, she awoke to find defendant kneeling next to her bed and touching her between her legs. Although victim A testified that she hid beneath the bed covers because she was scared, she also identified defendant as the perpetrator, described his clothing and detailed both his attempts “to put his hands in [her] pants” and her efforts to resist him. The following morning, victim A, who described the incident as “the most scariest thing that ever happened,” revealed to her mother that defendant had touched *1170 her “where boys shouldn’t touch girls.” Victim A’s mother immediately contacted her ex-boyfriend, who was undergoing work-related training with defendant at the time. When the ex-boyfriend confronted defendant regarding victim A’s allegations, defendant replied only that he had been intoxicated the previous evening and did not remember anything after he “passed out” on the floor of the living room.
Although defendant deems victim A to be “very credible,” he contends that her account of the abuse is suspect because she “did not have much opportunity to view the person who [touched her], as she was hiding under the covers at the time in a darkened room after having been awakened” and, further, suggests that she might have confused defendant with the other male overnight guest present in the residence. The record reflects, however, that victim A was well acquainted with the other overnight guest and, more to the point, victim A testified that “[the] lamp by [her] sister’s bed” remains illuminated at night because her sister is afraid of the dark. In light of the foregoing testimony, and granting due deference to the jury’s ability to observe the witnesses’ demeanor and assess their credibility, we do not find that the jury failed to accord the evidence the weight it deserved. Accordingly, we discern no basis upon which to disturb defendant’s conviction as to victim A.
We reach a similar conclusion with respect to victim B. Victim B testified that she had known defendant for eight or nine years, as he was friends with her stepfather. On an evening in September 2010, victim B and her sister were playing in the yard at their residence when defendant stopped by to see victim B’s mother and stepfather, who were out for the evening. After speaking with victim B’s great-grandmother, who was babysitting victim B and her sister, defendant visited with the children, pushing victim B’s sister on a swing in the yard. At some point, victim B entered a tent that had been set up in the yard to retrieve something for her sister, whereupon she heard defendant ask her sister to bring him a beer. When victim B’s sister went into the house to retrieve the beverage, defendant entered the tent, told victim B to lie down and put his hand down victim B’s pants. Victim B testified that she told defendant to “stop” but “he wouldn’t stop.” After warning victim B not to tell anyone, defendant drank his beer and left the premises. Victim B testified that she did not tell anyone about this incident until questioned by her mother approximately six weeks later “[b]ecause [she] thought that [she had done] something wrong.” Defendant admitted that he was at victim B’s residence on the night in question, but he denied entering *1171 the tent or touching victim B in any fashion. Although defendant views victim’s B testimony as highly suspect given that her disclosure was not spontaneous and she had a documented history of lying about what her mother characterized as “kid stuff,” these issues were fully vetted at trial and extensively explored on cross-examination. Again, granting appropriate deference to the jury’s credibility determinations, “we cannot conclude that the jury erred in crediting [victim B’s] testimony over that of defendant or failed to give the evidence the weight it should be accorded” (People v Allen, 13 AD3d 892, 894 [2004], lv denied 4 NY3d 883 [2005]).
As a final matter, we reject defendant’s claim that he was deprived of a fair trial due to prosecutorial misconduct. To the extent that defendant’s specific arguments on this point have been preserved for our review, “the record as a whole fails to disclose that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive [defendant] of a fair trial” (People v Green, 119 AD3d 23, 30 [2014] [internal quotation marks and citations omitted]; see People v Kindred, 100 AD3d 1038, 1040 [2012], lv denied 21 NY3d 913 [2013]; People v Perry, 95 AD3d 1444, 1446 [2012], lv denied 19 NY3d 1000 [2012]) — particularly given that, where appropriate objections were made by defense counsel, County Court responded with prompt curative instructions. Defendant’s remaining contentions, including his assertion that the sentence imposed was harsh and excessive, have been examined and found to be lacking in merit.
Lahtinen, J.E, McCarthy, Rose and Lynch, JJ., concur.
Ordered that the judgment is affirmed.