*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: July 14, 2016                    106644
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                MEMORANDUM AND ORDER

EFRAIN J. ACEVEDO III,
                    Appellant.
_____


Calendar Date: May 27, 2016

Before: McCarthy, J.P., Rose, Devine, Clark and Aarons, JJ.

_____


        Danielle Neroni Reilly, Albany, for appellant.

        P. David Soares, District Attorney, Albany (Christopher D.
Horn of counsel), for respondent.

_____


Rose, J.

        Appeal from a judgment of the County Court of Albany County
(Lynch, J.), rendered May 9, 2014, upon verdicts convicting
defendant of the crimes of criminal possession of a controlled
substance in the third degree and criminal possession of
marihuana in the fourth degree.

        On October 30, 2012, hospital staff at Albany Medical
Center responded to a report of an odor of burning marihuana and
traced that odor to defendant's room. When questioned by
hospital security, defendant allegedly admitted to smoking
marihuana and to having more of it in his backpack, prompting the
search of his backpack and the discovery of more than two ounces
of marihuana inside. Hospital security then searched defendant's
jacket and discovered over one-half ounce of crack cocaine.

Police officers were ultimately called to the hospital and discovered over $5,000 inside of defendant's pillowcase. As a result, defendant was charged in a four-count indictment with criminal possession of a controlled substance in the third degree (two counts), criminal possession of marihuana in the fourth degree and criminally using drug paraphernalia in the second degree. Following a jury trial, he was acquitted of one count of criminal possession of a controlled substance in the third degree, which required proof of his possession of crack with the intent to sell it. He was also acquitted of criminally using drug paraphernalia in the second degree and convicted of criminal possession of marihuana in the fourth degree. The jury was, however, unable to reach a verdict on the second count of criminal possession of a controlled substance in the third degree, which required proof that he possessed one-half ounce or more of crack. Following a second jury trial, defendant was convicted of that charge. He was subsequently sentenced to an aggregate prison term of three years, to be followed by two years of postrelease supervision. Defendant now appeals.

We find merit in defendant's contention that County Court erred in denying his request to charge the lesser included offense of unlawful possession of marihuana. The People properly concede that unlawful possession of marihuana is a lesser included offense of criminal possession of marihuana in the fourth degree (see Penal Law §§ 221.05, 221.15). Thus, our inquiry distills to whether "'there is a reasonable view of the evidence which would support a finding that . . . defendant committed such lesser offense but did not commit the greater'" (People v Colville, 20 NY3d 20, 31 [2012], quoting CPL 300.50 [1]; see People v Williams, 138 AD3d 1233, 1237 [2016]). In evaluating this question, we must view the evidence in the light most favorable to defendant and assess whether "'there is . . . some identifiable, rational basis on which the jury could reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime'" (People v Rivera, 23 NY3d 112, 121 [2014], quoting People v Scarborough, 49 NY2d 364, 369-370 [1980]; accord People v Grayson, 138 AD3d 1250, 1251 [2016]).

Here, we find that the jury could have accepted portions of each witness's testimony, while rejecting other portions, and arrived at the conclusion that defendant committed the lesser offense but not the greater.  Based upon our review of the record, we find that the evidence of the odor of marihuana that led hospital staff to defendant's room plus his admission to smoking marihuana in his room could lead a rational factfinder to conclude that defendant possessed a small amount of marihuana that he had smoked in the hospital, but that he was not aware of the larger amount of marihuana that was discovered in his backpack that had been delivered to his room by family members after his admission to the hospital.  Accordingly, we must reverse his conviction for criminal possession of marihuana in the fourth degree and remit for a new trial on that charge (see People v Carota, 93 AD3d 1072, 1076 [2012]; People v Rivera, 70 AD3d 1177, 1183-1184 [2010], lvs denied 14 NY3d 855, 891 [2010]; People v Ryan, 55 AD3d 960, 964 [2008]).  As a result of this conclusion, defendant's remaining challenges to his conviction for criminal possession of marihuana in the fourth degree are rendered academic.

Turning to defendant's conviction of criminal possession of a controlled substance in the third degree, defendant contends that the People violated his equal protection rights pursuant to Batson v Kentucky (476 US 79 [1986]) by using peremptory challenges to remove two nonwhite members of the second panel of prospective jurors[1] – namely, juror No. 2 and juror No. 14 – and that County Court improperly compressed the Batson inquiry.  When a party raises a Batson challenge, courts engage in a three-step process (see People v Hecker, 15 NY3d 625, 634-635 [2010], cert denied 563 US 947 [2011]; People v Smocum 99 NY2d 418, 421-422 [2003]).  "At step one, the moving party bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges.  Once a prima facie case of discrimination has been established, the burden shifts, at step two, to the nonmoving party to offer a facially neutral explanation for each suspect challenge.  At the third step, the

[1]  As noted by County Court, the People did not use a peremptory challenge to remove a third nonwhite juror.

burden shifts back to the moving party to prove purposeful discrimination and the trial court must determine whether the proffered reasons are pretextual" (People v Jones, 136 AD3d 1153, 1157-1158 [2016] [internal quotation marks and citations omitted], lv denied 27 NY3d 1000 [2016]; see People v Allen, 86 NY2d 101, 109-110 [1995]). While the step-two determination focuses only on the facial neutrality of the explanation, the step-three determination "is a question of fact, focused on the credibility of the race-neutral reasons," and it is incumbent on the moving party "to make a record that would support a finding of pretext" at step three (People v Smocum, 99 NY2d at 422; see People v James, 99 NY2d 264, 271-272 [2002]; People v Payne, 88 NY2d 172, 183-184 [1996]). Stated differently, after the trial court accepts the nonmoving party's race-neutral reasons, "the moving party must make a specific objection to the exclusion of any juror still claimed to have been the object of discrimination" (People v James, 99 NY2d at 272).

Inasmuch as the People offered facially race-neutral reasons for the use of their peremptory challenges at step two, the sufficiency of defendant's step one showing is now moot (see People v Grafton, 132 AD3d 1065, 1067 [2015], lvs denied 26 NY3d 1145, 1147 [2016]; People v Knowles, 79 AD3d 16, 20 [2010], lv denied 16 NY3d 896 [2011]). As to juror No. 2, the People based their peremptory challenge on his perceived inattentiveness, explaining that they "had to get his attention several times" during voir dire and "dr[a]w him in" because "he was out in thought somewhere." We are mindful that "[t]he explanation at step two is not required to be persuasive or even plausible; as long as the reasons for the challenges are facially neutral, even ill-founded reasons will suffice" (People v Grafton, 132 AD3d at 1066 [internal quotation marks and citations omitted]; see People v Smocum, 99 NY2d at 422; People v Allen, 86 NY2d at 109-110). Here, the People's explanation was facially neutral, as it reflected their concern regarding juror No. 2's inattentive demeanor (see People v Miles, 55 AD3d 307, 308 [2008], lv denied 11 NY3d 928 [2009]).

Regarding juror No. 14, the People stated that they did not want her on the jury because she believed that "she was a victim of racial profiling." Contrary to defendant's argument on

appeal, the record establishes that juror No. 14's statement was in response to a race-neutral question posed by the People — specifically, whether she felt "like [she was] targeted or . . . that [she] caught a break," when she had previously been accused of a crime that was ultimately dismissed — and it was the juror herself who interjected the element of race into her answer (compare People v Mallory, 121 AD3d 1566, 1567 [2014]).[2]  Thus, here too, the People's proffered reason was sufficient to shift the burden to defendant, as it was "based on something other than the race of" juror No. 14 (People v Hecker, 15 NY3d at 655 [internal quotation marks and citation omitted]; see People v Allen, 86 NY2d at 110).

     Following the People's step-two proffer, County Court denied the Batson challenge, without any attempt to respond or protestation registered by defendant.  Now, on appeal, defendant contends for the first time that County Court erred in failing to conduct a step-three inquiry.  However, "[b]y accepting the People's explanation without any additional objection at a time

     [2]  The dissent characterizes the question posed by the People as unique, reasoning that juror No. 14 was the only prospective juror asked about "target[ing]."  The record reveals, however, that juror No. 14 was the only prospective juror asked this question because she was the only one who had been previously charged with a crime and had not expressed any ill will toward the People during questioning by County Court.  To this end, three other prospective jurors also stated that they had previously been charged or convicted of crimes; however, they indicated during questioning by County Court — i.e., prior to the point at which the People could question each of them — that they could not be impartial and had animosity toward the People.  Thus, it was unnecessary for the People to question these prospective jurors after their responses to County Court's questioning established their lack of impartiality.  Furthermore, prospective jurors who discussed relatives or friends accused of crimes could be viewed as falling into a different category than one who admitted to having been personally accused, and we would expect the People's colloquies with such jurors to reflect this subtle distinction.

[when] it could have been addressed, defendant failed to preserve" this contention for our review (People v James, 99 NY2d at 272; see People v Smocum, 99 NY2d at 423-424; People v Thomas, 92 AD3d 1084, 1086 [2012]; People v Knowles, 79 AD3d at 21; compare People v Grafton, 132 AD3d at 1067), and we decline to exercise our interest of justice jurisdiction (see People v Coleman, 5 AD3d 1074, 1075 [2004], lv denied 3 NY3d 638 [2004]). In reaching this conclusion, we reaffirm the importance of both the trial court's attention to each articulated, sequential step of the Batson inquiry, and counsel's "attention to placing their objections on the record so they may be addressed by the court" (People v Smocum, 99 NY2d at 423-424). Indeed, "whatever procedural problems may exist in a Batson inquiry, the overriding concern is that a properly preserved question regarding the ultimate issue of discrimination is meaningfully addressed" (People v Grafton, 132 AD3d at 1067 [emphasis added]; see People v Smocum, 99 NY2d at 423; People v James, 99 NY2d at 273).

Defendant also contends that, because his intent to sell was not an issue at the second trial, County Court erred in partially denying his motion to preclude the People from introducing evidence regarding the $5,000 in cash that was seized from his pillowcase. "'Even where technically relevant evidence is admissible, it may still be excluded by the trial court in the exercise of its discretion if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side'" (People v Cassala, 130 AD3d 1252, 1256 [2015], lv denied 27 NY3d 994 [2016], quoting People v Scarola, 7 NY2d 769, 777 [1988] [citations omitted]; see People v Caban, 14 NY3d 369, 374-375 [2010]). Where the intent to sell is not an element of the crime charged, proof that a defendant possessed a large sum of cash at the time of arrest is generally inadmissible because it typically has no relationship to the charge and, thus, any probative value is outweighed by the potential for prejudice (see People v Bailey, 159 AD2d 862, 863 n [1990]; People v Whitfield, 144 AD2d 915, 915-916 [1988]; see also People v Sumter, 68 AD3d 1701, 1702 [2009], lv denied 14 NY3d 893 [2010]).

Here, it is undisputed that the intent to sell was not an element of the crime at issue in the second trial. Nevertheless, the People maintained that the $5,000 in cash was relevant to

prove defendant's financial means to purchase the amount of crack at issue and also to refute his position – which he maintained during the first trial – that he could not be held accountable for any admissions made at the time that the crack was confiscated from his jacket pocket because he was in an allegedly oblivious state of consciousness due to the pain medications that had been administered to him.  To counter this tactic, the People sought to show that defendant had exhibited full awareness of his circumstances when the cash was seized from his pillowcase very shortly after the seizure of the crack.  In our view, the People's proffer established a sufficient relationship between the $5,000 in cash and the crime charged, and County Court's compromise – which allowed the People to elicit testimony regarding the $5,000 in cash, but prohibited them from introducing evidence that it was almost exclusively comprised of $20 bills – ameliorated the potential for prejudice (compare People v Whitfield, 144 AD2d at 916).

In any event, even if we were to conclude that County Court abused its discretion, we would find that there was overwhelming evidence of defendant's guilt (see People v Sumter, 68 AD3d at 1702).  In this regard, several witnesses testified that defendant admitted ownership of the crack found in his jacket and it was established that the crack weighed over one-half ounce.  This proof – even in the face of defendant's testimony denying the foregoing events – overwhelmingly established defendant's guilt and, thus, any error in admitting the testimony regarding the $5,000 found in defendant's pillowcase was harmless (see People v DeCarr, 130 AD3d 1365, 1367 [2015], lv denied 26 NY3d 1008 [2015]).

We are also unpersuaded by defendant's contention that he was deprived of a fair trial by the prosecutor's comments during summation.  Initially, defendant's challenge to the prosecutor's remarks regarding the testimony of defendant's mother and whether defendant disputed that crack was found in his jacket went unobjected to at trial and, thus, are unpreserved for our review (see People v Adams, 135 AD3d 1154, 1158 [2016], lv denied 27 NY3d 990 [2016]; People v Mitchell, 129 AD3d 1319, 1321 [2015], lv denied 26 NY3d 1041 [2015]).  As for the remaining comments that defendant challenges, even if we were to conclude that they

were improper, we would find that they did not constitute such "a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive [him] of a fair trial" (People v Fiorino, 130 AD3d 1376, 1380 [2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 1087 [2015]; see People v Mitchell, 129 AD3d at 1321; People v Heiserman, 127 AD3d 1422, 1424 [2015]; compare People v Cassanova, 119 AD3d 976, 979 [2014]; People v Forbes, 111 AD3d 1154, 1160 [2013]), especially in light of the fact that County Court sustained a number of defendant's objections and gave several prompt and adequate curative instructions (see People v Chancey, 127 AD3d 1409, 1412 [2015], lv denied 25 NY3d 1199 [2015]; People v Milford, 118 AD3d 1166, 1171 [2014], lv denied 23 NY3d 1065 [2014]).

We have considered defendant's remaining contentions and find them to be unavailing.

Devine and Clark, JJ., concur.


McCarthy, J. (concurring in part and dissenting in part).

"The Constitution forbids striking even a single prospective juror for a discriminatory purpose" (Snyder v Louisiana, 552 US 472, 478 [2008] [internal quotation marks, brackets and citations omitted]; accord Foster v Chatman, ___ US ___, ___, 136 S Ct 1737, 1747 [2016]). Once a Batson challenge is made, a trial court must engage in a three-step process, the steps of which are well-established by clear case law stretching back more than 30 years (see Foster v Chatman, 136 S Ct at 1747; Batson v Kentucky 476 US 79, 97-98 [1986]). The third step of this inquiry is the "key, final protocol," in which the trial court both resolves factual disputes and makes findings of fact and assessments of credibility (People v Payne, 88 NY2d 172, 186 [1996]). A trial court that resolves a Batson challenge without proceeding to this third step "falls short of [providing] a meaningful inquiry into the question of discrimination" (People v Smocum, 99 NY2d 418, 423 [2003] [internal quotation marks and citations omitted]). Further, "trial courts bear the judicial responsibility of ensuring that an adequate record is made and of reflecting the basis for their [Batson] rulings" (People v Payne,

88 NY2d at 184). It is uncontested that, here, County Court failed to proceed to the third step of defendant's Batson challenge. In contrast to the majority, we find that, as in People v Watson (___ AD3d ___, ___, 2016 NY Slip Op 03688, *5 [2016]), corrective action in the interest of justice is warranted based on this failure. We would remit the matter for further proceedings necessary to satisfy the Batson inquiry and, therefore, we respectfully dissent in this regard.

We agree with the majority's analysis as to the application of the first two steps of the Batson inquiry. Our focus is on the potential harm of County Court's failure to proceed to the third step, in which defendant would be afforded the opportunity to persuade the court that two nonwhite jurors, juror No. 2 and juror No. 14, were struck based on purposeful discrimination, prior to the court making a determination as to whether the prosecutor's proffered reasons for striking those jurors were pretextual (see Foster v Chatman, 136 S Ct at 1747; People v Jones, 136 AD3d 1153, 1158 [2016], lv dismissed 27 NY3d 1000 [2016]). As to this third step, "[t]he trial court has a pivotal role in Batson claims [including] an evaluation of the prosecutor's credibility" (Snyder v Louisiana, 552 US at 477). This is especially true when a prosecutor cites a juror's demeanor as the reason for the use of the peremptory challenge (see e.g. id. at 479).

In assessing whether corrective action is warranted despite defendant's failure to preserve the issue,[1] we turn to the questions raised by the record that cannot be resolved given the

---

[1] In considering the importance of preservation, it is notable that the interests that Batson was designed to protect are not all represented by a defense attorney's zealous advocacy. "Batson was designed to serve multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors" (Powers v Ohio, 499 US 400, 406 [1991] [internal quotation marks and citations omitted]). "Batson recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large" (id. [citation omitted]).

absence of the step-three inquiry. Notably, the prosecutor's sole articulated reason for striking juror No. 2 was that he was not paying attention. The two relevant comments that the prosecutor had made during the previous questioning was that juror No. 2 had looked "deep in thought" and that he looked like he was "thinking really hard." In the absence of a step-three inquiry, the record is bereft of any findings by County Court as to whether or not juror No. 2 had been paying attention or whether or not it credited the proffered explanation that he had not been paying attention.

Regarding juror No. 14, a black woman, the prosecutor stated that he did not want her on the jury because she believed that "she was a victim of racial profiling." County Court failed to make the crucial finding resolving whether that reason was pretextual.[2] This more probing inquiry should have considered the views expressed by juror No. 14, in response to a number of questions by the prosecutor regarding a decade-old "[s]hoplifting" charge against her that had been dismissed by a court[3]: she believed she had been treated fairly by law enforcement and the court system; she described the police officer involved, the judge involved and her attorney as "very nice"; and she did not have preconceived notions about law enforcement or about the court system. After receiving these responses — responses which one might expect from an exemplary prospective juror — the prosecutor asked her whether she had felt "targeted." In response, and for the first time, she mentioned race, stating that she "believ[ed] it was a case of racial

---

[2]  As the majority notes, step two can be satisfied by unpersuasive or implausible reasons, as long as they are facially neutral. That step was satisfied here by the literal conclusion that juror No. 14 mentioned racial profiling in response to a question that did not mention race.

[3]  Before the prosecutor's inquiry had even begun, juror No. 14 had already assured County Court that she could be fair and impartial, that she would not hold that prior "episode" against the People and that she understood that the episode and the trial at issue were "completely different situations."

profiling . . . [b]ecause of how [she] looked and how [she] was dressed."[4]  She further stated that this conclusion was "just [her] opinion" and that it was "just how [she] processed it." Although the aforementioned colloquy was unique from all others based on the fact that juror No. 14 mentioned racial profiling, it was also unique from all others based on the fact that she was the only juror asked about "target[ing]."  The prosecutor had multiple colloquies with jurors regarding criminal accusations and convictions and never asked another juror for an opinion about whether the subject of those accusations or convictions had been "targeted."[5]  County Court was uniquely situated to make factual findings regarding the foregoing before making a credibility determination as to whether or not the prosecutor's stated reason for using a peremptory strike against this juror was pretextual.

On this record, "[t]he prosecutor's putatively neutral explanations cannot be assessed and resolved as a matter of law, given the ambiguities and lack of clarity" (People v Watson, 2016 NY Slip Op 03688 at *4).  In light of this conclusion, and upon consideration of the critical role that Batson plays in the provision of justice, we would hold defendant's appeal in abeyance and remit the matter for further proceedings necessary to satisfy the requirements of Batson v Kentucky (476 US 79 [1986], supra) and its progeny (see Foster v Chatman, 136 S Ct

---

[4]  Notably, juror No. 14 never stated who she felt had racially profiled her.

[5]  The majority concludes that it would have been "unnecessary" to ask other jurors about targeting, because those who admitted to having been accused of a crime had already expressed ill will toward the People prior to any colloquy with the prosecutor.  That analysis, however, overlooks the fact that a number of jurors discussed criminal accusations against "relative[s] or close friend[s]."  Multiple jurors assured the prosecutor that they could be fair despite criminal accusations against relatives or friends, and the prosecutor did not ask any of those jurors whether the relevant relative or friend had been "targeted."

1737; <u>Snyder v Louisiana</u>, 552 US 472 [2008], <u>supra</u>; <u>Powers v
Ohio</u>, 499 US 400 [1991]; <u>People v Watson</u>, 2016 NY Slip Op 03688
at *5).

Aarons, J., concurs.


ORDERED that the judgment is modified, on the law, by
reversing defendant's conviction of criminal possession of
marihuana in the fourth degree under count three of the
indictment and vacating the sentence imposed thereon; matter
remitted to the County Court of Albany County for further
proceedings pursuant to CPL 460.50 (5) and for a new trial on
count three; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court