People v Morgan (2024 NY Slip Op 04165)

People v Morgan

2024 NY Slip Op 04165

Decided on August 8, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 8, 2024

113481
[*1]The People of the State of New York, Respondent,
v
Arthur H. Morgan Jr., Appellant.

Calendar Date:March 28, 2024

Before:Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ.

Steven M. Sharp, Albany, for appellant.
Christopher Liberati-Conant, District Attorney, Hudson, for respondent.

Egan Jr., J.
Appeal from a judgment of the County Court of Columbia County (Richard M. Koweek, J.), rendered March 31, 2022, upon a verdict convicting defendant of the crime of manslaughter in the first degree.
Defendant and his wife (hereinafter the victim) resided together in a trailer home in the Town of Claverack, Columbia County. The victim was last seen alive in March 2008 and, on April 9, 2008, her body was found wrapped in a blanket underneath the couple's home. Defendant was charged in an indictment with murder in the second degree, and a jury trial ended with him being convicted as charged. Upon appeal from the judgment and an order denying defendant's CPL article 440 motion, we found that the verdict was supported by the trial evidence, but that reversal and a new trial was required because defendant had been deprived of his right to testify in his own defense (149 AD3d 1148 [3d Dept 2017]). At the conclusion of that second trial, the jury convicted defendant of manslaughter in the first degree. County Court sentenced defendant to 25 years in prison to be followed by five years of postrelease supervision. Defendant appeals.
We affirm. Pointing to the absence of proof establishing the victim's cause of death and purported inconsistencies in witness testimony, defendant contends that his conviction is not supported by legally sufficient evidence and is against the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Bridges, 220 AD3d 1107, 1108 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1091 [2024]). "[W]hen conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Jenkins, 215 AD3d 1118, 1119 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 997 [2023]). "[W]e do not distinguish between direct or circumstantial evidence in conducting a legal sufficiency and/or weight of the evidence review" (People v Bridges, 220 AD3d at 1108 [internal quotation marks and citations omitted]). As relevant here, "[a] person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes the death of such person" (Penal Law § 125.20 [1]).
There is no dispute that the victim's body was found wrapped in a blanket underneath the trailer home she shared with defendant and that her cause of death was [*2]undetermined. The questions were how she died, who put her body under the mobile home and why, and the People attempted to prove that defendant had stashed her body there after killing her. In that regard, the trial evidence included the testimony of multiple witnesses who described how they had seen defendant commit acts of domestic violence against the victim in the years leading up to 2008, including one who watched defendant choke the victim and threaten to kill her and "bury her body where no one would find it." The trial evidence further reflected that defendant had learned that the victim was having an extramarital affair in the weeks before her death, and one individual described how defendant promised that he was going to "take care" of the victim after learning of the affair in March 2008. Another individual described how defendant had asked him whether "the cops [would] come looking for him" if the victim did not show up for a scheduled court appearance and "they didn't find her body." Most damning, however, was testimony from defendant's brother regarding conversations between the two men in which defendant stated that "[e]verything is just fine now" after the victim had disappeared and how "it had to go the way it did" after her body was found. Defendant's brother further described how defendant later acknowledged that he had placed the victim's body under the trailer home because he did not have a vehicle and could not dispose of the body in the way he had planned.
There was, in other words, significant proof reflecting that defendant had been violent toward the victim in the past and that he intended to, at a minimum, seriously harm her after learning of her affair. Other evidence corroborated the testimony suggesting that he had followed through on those plans and that the victim died as a result, including the presence of scratch marks on defendant's face and hand that investigators observed after the victim's disappearance, the presence of bloodstains inside the mobile home, and the recovery of fibers from the blanket in which the victim was found on the exterior rear stairs of the trailer home. After defendant was arrested, the victim's driver's license, Social Security card and health insurance card were found to be in his possession; meanwhile, his DNA was identified in material recovered from underneath her fingernails. Moreover, while Jeffrey Hubbard, the forensic pathologist who performed the autopsy on the victim, could not identify the cause of her death with reasonable certainty, he made clear that he had also found no natural reason for her death and that certain causes of death, such as asphyxiation by suffocation or smothering, would not be detectable in an autopsy. The forensic pathologist further confirmed that, while the presence of a byproduct of cocaine in the victim's blood suggested that she had used cocaine sometime before her death, the levels of that substance were too low to point to cocaine toxicity as the [*3]cause of her death.
When viewed in the light most favorable to the People, we have no difficulty concluding that the foregoing evidence is legally sufficient to support the conviction of manslaughter in the first degree (see Penal Law § 125.20 [1]; People v Bridges, 220 AD3d at 1111; People v Beckingham, 57 AD3d 1098, 1099 [3d Dept 2008], lv denied 13 NY3d 742 [2009]). To be sure, defendant challenged that evidence in various respects, most notably by pointing out that the credibility of his brother was open to question given his brother's criminal background and prior willingness to cooperate with the police, and by presenting the testimony of a forensic pathologist who reviewed the autopsy results and suggested that cocaine toxicity was the most likely cause of the victim's death.[FN1] Those issues were fully explored during the trial, however, and the jury obviously credited the trial evidence indicating that, while defendant may not have intended to kill the victim, he nevertheless attacked her with the aim of seriously harming her and she died as a result of her injuries. Viewing the evidence in a neutral light and according deference to the jury's assessment of credibility, we are similarly satisfied that the verdict is not against the weight of the evidence (see People v Franklin, 216 AD3d 1304, 1312 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Babcock, 152 AD3d 962, 967 [3d Dept 2017], lv denied 30 NY3d 947 [2017]; People v Morgan, 149 AD3d at 1151).
Turning to defendant's other challenges, we disagree with his assertion that the grand jury proceedings were impaired by Hubbard's testimony as to the victim's manner of death. Assuming that defendant adequately preserved such claim (see CPL 210.20 [1] [c]; 210.35 [5]; People v Cain, 209 AD3d 124, 125 [3d Dept 2022], lv denied 39 NY3d 1071 [2023]), even if such testimony touches upon the ultimate issue, expert testimony is permissible where it helps clarify an issue that calls for professional or technical knowledge (see People v Pascuzzi, 173 AD3d 1367, 1375 [3d Dept 2019], lv denied 34 NY3d 953 [2019]; People v Ramsaran, 154 AD3d 1051, 1055 [3d Dept 2017], lv denied 30 NY3d 1063 [2017]). In any event, considering Hubbard's testimony that a cause of death could not be medically determined, we cannot say that the challenged testimony impaired the integrity of the grand jury proceedings (see People v West, 166 AD3d 1080, 1081 [3d Dept 2018], lv denied 32 NY3d 1129 [2018]; People v Piznarski, 113 AD3d 166, 181 [3d Dept 2013], lv denied 23 NY3d 1041 [2014]).
Next, County Court did not err in finding reconsideration of defendant's suppression motion to be barred by the law of the case. The issue was fully decided as part of the initial trial, and defendant failed to demonstrate manifest error to warrant reconsideration (see People v Cummings, 31 NY3d 204, 208 [2018]; People v Lewis, 180 AD3d 1335, 1335-1336 [4th Dept 2020], lv denied 35 NY3d 1046 [2020]; People v Willette, 73 AD3d 1278, [*4]1279 [3d Dept 2010], lv denied 16 NY3d 746 [2011]). Still, the record demonstrates that defendant made only equivocal statements regarding counsel while being interviewed and, likewise, the letter sent by the Columbia County Public Defender's office was not conclusive that defendant was being represented in the context of the criminal action, as he had previously informed officers that he was being represented in an ongoing Family Court proceeding. As such, the right to counsel was not triggered here (see People v Montgomery, 221 AD3d 1347, 1348 [3d Dept 2023], lv denied 41 NY3d 966 [2024]; People v Burton, 215 AD3d 1054, 1060 [3d Dept 2023], lv denied 40 NY3d 927 [2023]).
County Court also properly permitted an additional witness to testify as to domestic violence between defendant and the victim upon retrial. "In situations involving domestic violence, prior bad acts are more likely to be relevant and probative because the aggression and bad acts are focused on one particular person, demonstrating the defendant's intent, motive, identity and absence of mistake or accident" (People v LaDuke, 204 AD3d 1083, 1088 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1072 [2022]). As part of the initial Molineux ruling, County Court (Nichols, J.) permitted the testimony of three individuals who had observed incidents of domestic violence between defendant and the victim. Upon retrial, the People sought to also admit an additional witness who, though part of the initial Molineux application, could not testify during the first trial. Although implicit in its ruling, County Court (Koweek, J.) did not abuse its discretion in weighing the probative value of this added testimony against the prejudicial impact to defendant and permitting the testimony considering the relevance of prior incidents of domestic violence to this prosecution (see People v Cole, 215 AD3d 1064, 1066 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; compare People v Hebert, 218 AD3d 1003, 1010 [3d Dept 2023], lv denied 40 NY3d 1080 [2023]; see generally People v Mazzeo, 202 AD3d 1279, 1284 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]). Although the court did improperly deny defendant's request for a limiting instruction at the time of the relevant testimony, an appropriate limiting instruction was provided as part of the court's final charge (cf. People v Maisonette, 192 AD3d 1325, 1329 [3d Dept 2021], lv denied 37 NY3d 966 [2021]; People v Holtslander, 189 AD3d 1701, 1704 [3d Dept 2020]; People v Elmy, 117 AD3d 1183, 1187 [3d Dept 2014]; People v Blond, 96 AD3d 1149, 1151 [3d Dept 2012], lv denied 19 NY3d 1101 [2012]).
Defendant's challenges to the admission of testimony from the first trial into evidence at the second are similarly unpersuasive. His contentions that the admission of that testimony violated his right to confront his accusers is unpreserved for our review (see People v Scott, 219 AD3d 1572, 1577 [3d Dept 2023]) and is, in any event, without [*5]merit (see People v Allah, 47 AD2d 738, 739 [1st Dept 1975]). Defendant also suggests that County Court failed to make a proper assessment as to whether a witness was truly unable to testify so as to warrant the use of her prior testimony; however, a formal "evidentiary hearing featuring sworn testimony is not an absolute prerequisite to making a finding that a witness is unavailable" (People v Guzman, 212 AD3d 580, 581 [1st Dept 2023], lv denied 39 NY3d 1141 [2023]). County Court had before it documentation from the witness's treating physician reflecting that she was being treated for epilepsy and having frequent seizures, that she would be "very likely" to suffer seizures if she was subjected to the stress of testifying, and that requiring her to testify was against the physician's recommendation. The trial court gave defense counsel a full opportunity to respond to those claims — during which he provided no reason to believe that the physician's representations regarding the condition of the witness were anything less than genuine — and we perceive no error in its determination that the witness was unavailable due to illness so as to render her prior testimony admissible under CPL 670.20 (see People v Evans, 127 AD3d 780, 782 [2d Dept 2015], lv denied 25 NY3d 1201 [2015]; People v Lombardi, 39 AD2d 700, 701-702 [1st Dept 1972], affd 33 NY2d 658 [1973], cert denied 416 US 906 [1974]; cf. People v Rivera, 124 AD3d 1070, 1072-1073 [3d Dept 2015], lv denied 26 NY3d 971 [2015]).[FN2]
We are also unpersuaded by defendant's contention that County Court erred in rejecting his challenges, advanced pursuant to Batson v Kentucky (476 US 79 [1986]), to the People's use of peremptory challenges to strike prospective jurors of color. A Batson challenge contemplates a three-step process. "At step one, the movant must make a prima facie showing that the peremptory strike was used to discriminate; at step two, if that showing is made, the burden shifts to the opposing party to articulate a non-discriminatory reason for striking the juror; and finally, at step three, the trial court must determine, based on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination" (People v Bridgeforth, 28 NY3d 567, 571 [2016] [citation omitted]; see People v Wright, ___ NY3d ___, ___ 2024 NY Slip Op 03320, *3 [2024]; People v Hecker, 15 NY3d 625, 634-635 [2010]; People v Hunter, 219 AD3d 975, 979 [3d Dept 2023]). As any issue with respect to the prima facie showing under step one was rendered moot by the prosecutor's provision of race-neutral reasons for the peremptory challenges (see People v Malloy, 166 AD3d 1302, 1308 [3d Dept 2018], affd 33 NY3d 1078 [2019]), we focus our attention on the second and third steps of the Batson inquiry.
Although defendant raised a Batson claim with regard to three prospective jurors of color, he acknowledged during the ensuing inquiry [*6]that the People had a valid reason to strike one of those individuals. As for the remaining two, defendant argued that the prosecutor's challenges reflected a pattern of striking prospective jurors of color at step one and, at step two, the prosecutor articulated race-neutral reasons for the peremptory challenges as required, explaining that he had challenged both prospective jurors because they had only lived in Columbia County for a few years and, in addition, was concerned that the second prospective juror might harbor hostility toward governmental officials like the prosecutor because of her negative experiences at the school district where she worked.
The prosecutor having articulated race-neutral explanations for his peremptory challenges, the matter proceeded to step three, at which point the inference of discrimination had been overcome and County Court was required to make "an ultimate determination on the issue of discriminatory intent based on all of the facts and circumstances presented" (People v Smocum, 99 NY2d 418, 422 [2003]; see People v Wright, 2024 NY Slip Op 03320 at *3). At that stage, because defendant bore the ultimate burden of demonstrating that the prosecutor's explanations were pretextual and was required to "make a record that would support a finding of pretext" (People v Smocum, 99 NY2d at 422), County Court was free to, and did, ask if defense counsel had anything further to add that might "persuade the court that [the prosecutor's] reasons [were] merely a pretext for intentional discrimination" (People v Hecker, 15 NY3d at 656 [internal quotation marks, brackets and citations omitted], cert denied 563 US 947 [2011]; accord People v Grafton, 132 AD3d 1065, 1066 [3d Dept 2015], lv denied 26 NY3d 1145 [2016]). Defense counsel responded that he believed the length of time the prospective jurors had lived in the county was a pretext, although he failed to point to any facts that might support that belief. He added that, to his recollection, the prospective juror who was a school employee had not indicated having any problem with the school during voir dire. The prosecutor responded and reiterated that the explanations he had offered were indeed the reasons he had challenged both prospective jurors — noting, in the process, that he might have misheard the second prospective juror regarding her school experiences but that his understanding of what the juror had said was what gave him reason for concern — and that his reasons for exercising the challenges were race neutral. County Court then determined that, "[w]ith respect to the [two prospective jurors], I believe there's a race-neutral reason . . . which would permit a challenge or a peremptory challenge by the People," and it granted both challenges.
In short, the foregoing reflects that County Court proceeded through the three steps of the Batson inquiry, afforded the parties an opportunity to make "full and complete arguments and submissions," and ultimately set forth [*7]on the record its "belie[f]" that the prosecutor had race-neutral reasons for challenging the prospective jurors (People v Payne, 88 NY2d 172, 185 [1996]; compare People v Hunt, 145 AD3d 550, 550-551 [1st Dept 2016], lv denied 29 NY3d 949 [2017], with People v Grafton, 132 AD3d at 1067).[FN3] To the extent that defendant asserts on appeal that County Court did not make the credibility determination required at step three of the Batson inquiry, he did not raise that issue before County Court, and his "substantive Batson arguments were insufficient to alert the trial court to defendant's claim that it had failed to follow the Batson protocol" so as to preserve the latter issue for our review (People v Rodriguez, 93 AD3d 595, 595 [1st Dept 2012], lv denied 19 NY3d 966 [2012]; see People v Hunt, 145 AD3d 550, 550-551 [1st Dept 2016], lv denied 29 NY3d 949 [2017]; People v Farrare, 118 AD3d 1477, 1477 [4th Dept 2014], lv denied 23 NY3d 1061 [2014]). In any event, even were we to assume that County Court did not explicitly satisfy its obligations at step three of the Batson inquiry by stating its "belie[f]" that race-neutral reasons existed for the People's peremptory challenges, County Court, at a minimum, "implicitly concluded that the prosecutor's explanation was not pretextual" as required (People v Farrare, 118 AD3d 1477, 1478 [4th Dept 2014], lv denied 23 NY3d 1061 [2014]; see People v Pena, 251 AD2d 26, 34 [1st Dept 1998], lv denied 92 NY2d 929 [1998]). County Court's determination that the prosecutor's explanations were genuine "was fully supported by the voir dire record and was entitled to great deference, as it was based upon the court's own observations and assessment of the prosecutor's credibility" (People v Williams, 177 AD3d 1178, 1182 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1164 [2020]; see People v Malloy, 33 NY3d 1078, 1079 [2019]; People v Thaxton, 222 AD3d 1175, 1178 [3d Dept 2023]). Thus, we perceive no error in its denial of defendant's Batson challenge.
Defendant's remaining arguments do not demand extended discussion. His contention that County Court erred in instructing the jury regarding the lesser included offense of manslaughter in the first degree is unpreserved given his failure to object to it (see People v Horton, 173 AD3d 1338, 1341 [3d Dept 2019], lv denied 34 NY3d 933 [2019]). His remaining contentions, including those regarding the conduct of the trial, have been examined and are lacking in merit. Finally, in view of the serious nature of the offense for which defendant was convicted, we are unpersuaded that the sentence imposed by County Court was unduly harsh or severe in any respect (see People v Bowden, 177 AD3d 1037, 1039 [3d Dept 2019], lv denied 34 NY3d 1157 [2020]; People v Burkett, 101 AD3d 1468, 1473 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]).
Garry, P.J., and Fisher, J., concur.
Powers, J. (dissenting).
Because we disagree with the majority's determination that [*8]County Court implicitly found the prosecutor's proffered reasons for the peremptory strikes to be nonpretextual in satisfaction of the third step of the Batson inquiry, we respectfully dissent.
As indicated by the majority, at the first step of the Batson inquiry, defendant, as the movant, was required to " 'make a prima facie showing that the peremptory strike was used to discriminate; at step two, if that showing is made, the burden shifts to the opposing party to articulate a non-discriminatory reason for striking the juror; and finally, at step three, the trial court must determine, based on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination' " (People v Hunter, 219 AD3d 975, 979 [3d Dept 2023], quoting People v Bridgeforth, 28 NY3d 567, 571 [2016]).
During the first round of jury selection, the prosecutor exercised peremptory challenges to remove prospective jurors Nos. A53 and A85.[FN4] Following the peremptory challenge to juror No. A85, defendant raised a Batson objection on the basis that the prosecutor had peremptorily challenged the only prospective jurors of color and, in doing so, had "establishe[d] a pattern." Defendant requested that the prosecutor provide a race-neutral reason for each peremptory challenge and County Court asked for the People's position. The prosecutor asserted that juror No. A85 had only been living in the county for two years and relocated to Columbia County because of the pandemic. Relatedly, the prosecutor explained that juror No. A53 had "only been [residing] in the county for five years" and that she was a teacher's assistant who had demonstrated a "problem" with "the authority of her school." Based upon the rationales provided, the prosecutor asserted that these individuals had not been struck based upon their race. County Court then asked defendant if there was "anything further," at which time defendant put on the record that juror No. A85 had "spent most of his life in Texas" and had resided in New York City for "a couple of years" prior to relocating to Columbia County. As to juror No. A53, defendant explained that she had switched to a different class because the school buildings changed, and she wished to remain in the same building and not, as the prosecutor had indicated, because she had issues with the authority of the school where she was employed. Defendant stated that the prosecutor's reasons were pretextual as to these prospective jurors because the length of time they had resided in the county was not a basis to exclude jurors from service. The prosecutor responded that he had his own recollection of juror No. A53's answers and that the basis of the challenges was unrelated to the race of the prospective jurors. Defendant countered that the court should not credit the reasons proffered by the prosecutor. Based upon the foregoing arguments, County Court briefly indicated that it "[*9]believe[d] there's a . . . race-neutral reason which would permit . . . a peremptory challenge by the People, not subject to Batson," and granted the People's challenge, ending its analysis there.
As the majority finds, the People's provision of a race-neutral reason for the peremptory strikes rendered any issue with respect to the prima facie showing under step one moot, and thus we need only be concerned with the second and third steps of the Batson inquiry (see People v Malloy, 166 AD3d 1302, 1308 [3d Dept 2018], affd 33 NY3d 1078 [2019]). Similarly, we agree with the majority that the People satisfied their burden under step two (see People v Kirkley, 172 AD3d 1541, 1545 [3d Dept 2019], lv denied 33 NY3d 1106 [2019]). However, we disagree that County Court's indication that it believed the People had proffered a race-neutral reason for the peremptory strikes "not subject to Batson" amounted to an implicit determination that these proffered reasons were not pretextual.
Mindful that defendant did not object to County Court's ultimate determination, we would nevertheless find that defendant adequately preserved his challenge to County Court's Batson ruling (see People v Davis, 253 AD2d 634, 635 [1st Dept 1998]; compare People v Strife, 167 AD3d 1095, 1096 [3d Dept 2018]). Regardless of "whatever procedural problems may exist in a Batson inquiry, the overriding concern is that a properly preserved question regarding the ultimate issue of discrimination is meaningfully addressed" (People v Grafton, 132 AD3d 1065, 1067 [3d Dept 2015], lv denied 26 NY3d 1145 [2016]). Defendant placed his objection to the ultimate issue on the record by specifically asserting that the prosecutor's proffered reasons were pretextual and should not be credited (see id.; compare People v Acevedo, 141 AD3d 843, 847-848 [3d Dept 2016]). Defendant was not required to reiterate that same argument after the court's denial of his challenge to preserve the issue for review on appeal (see CPL 470.05 [2]; see generally People v Finch, 23 NY3d 408, 413 [2014]; People v Smith, 174 AD3d 1039, 1043 [3d Dept 2019], lv denied 35 NY3d 1097 [2020]). This is not a case where defendant "accept[ed] the People's explanation without any additional objection at a time that it could have been addressed," rather, defendant took specific issue with the prosecutor's proffered reasons as to the two challenged jurors, satisfying his obligation to "make a specific objection to the exclusion of any juror still claimed to have been the object of discrimination" (People v James, 99 NY2d 264, 272 [2002]; see People v Acevedo, 141 AD3d at 847).
Although trial courts are permitted to implicitly determine that the race-neutral explanations offered by the prosecutor are not pretextual (see People v Cruz, 228 AD3d 1019, 1023 [3d Dept 2024]; People v Smyre, 195 AD3d 1458, 1459 [4th Dept 2021], lv denied 37 NY3d 1029 [2021]; People v Malloy, 166 AD3d at 1309 n 3), we find that the language utilized by County [*10]Court cannot be construed as making an implicit determination. County Court did not state that it believed the race-neutral reasons offered by the prosecutor; instead, the court indicated that it "believe[d] there's a race-neutral reason . . . which would permit a . . . peremptory challenge by the People, not subject to Batson." This language demonstrates that the court only considered whether the People had proffered a race-neutral reason and not whether the race-neutral reason was pretextual as required under the third step of the Batson inquiry, despite defendant's arguments to this effect (see People v Grafton, 132 AD3d at 1067; People v Fabregas, 130 AD3d 939, 942 [2d Dept 2015]).
Relevant to juror No. A53, review of the voir dire transcript demonstrates that she had indicated that she had switched from a prekindergarten class to a kindergarten class because the school moved classrooms to another building, and she wanted to remain in the building where she had previously worked. Accordingly, the prosecutor misconstrued her response and the proffered basis for the peremptory challenge "is not borne out by the record" (People v Coleman, 195 AD3d 1411, 1413 [4th Dept 2021]; see People v Fabregas, 130 AD3d at 941-942). Although a prosecutor's mistaken recollection as to a juror's answers during voir dire may be credited by the trial court so long as it "was an honest mistake and not a pretext for intentional discrimination" (People v Alvarado, 306 AD2d 18, 18 [2d Dept 2003], lv denied 100 NY2d 578 [2003]), the record must still bear out whether the court found the proffered reason, though mistaken, to be genuine (see People v Erskine, 90 AD3d 674, 674 [2d Dept 2011]). Because County Court only briefly indicated that the prosecutor had proffered a race-neutral reason for the peremptory strike, the record fails to reflect whether the court believed this explanation to be genuine.
Based upon this, we would find that County Court failed to conduct the required third step of the Batson inquiry and that, because of the court's subsequent retirement from the bench, the only permissible remedy would be remittal for a new trial (see People v Scott, 70 NY2d 420, 426 [1987]; People v Grafton, 132 AD3d at 1068). For these reasons, we respectfully dissent.
McShan, J., concurs.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: To the extent that defendant's various contentions regarding the supposed limitations placed upon his cross-examination of prosecution witnesses are properly before us, we are unable to say that County Court abused its sound discretion on that score in any respect (see People v Halter, 19 NY3d 1046, 1050 [2012]; People v Major, 143 AD3d 1155, 1159 [3d Dept 2016], lv denied 28 NY3d 1147 [2017]).

Footnote 2: Contrary to defendant's contention, County Court properly refused to permit the introduction of an out-of-court hearsay statement by that witness (see People v Molson, 89 AD3d 1539, 1541 [4th Dept 2011], lv denied 18 NY3d 960 [2012]).

Footnote 3: Notably, although some of the prosecutor's concerns about the second prospective juror were due to a misunderstanding of the juror's answers during voir dire, County Court remained free to credit the prosecutor's claim (see People v Alvarado, 306 AD2d 18, 18 [1st Dept 2003], lv denied 100 NY2d 578 [2003]; People v Sanchez, 302 AD2d 282, 283 [1st Dept 2003], lv denied 100 NY2d 542 [2003]).

Footnote 4: Defendant's Batson challenge also incorporated the People's peremptory challenge to prospective juror No. A42. However, defendant conceded that the People had proffered a race-neutral reason as to this individual based upon the prosecutor's rationale that they had struck her because of her husband's criminal conviction and her hesitation when asked if she would disregard her husband's conviction if she were to serve on the jury.