■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VERNON HOUGHTALING, Appellant. [787 NYS2d 733]—

Spain, J. Appeal from a judgment of the County Court of Sullivan County (Ledina, J.), rendered March 4, 2003, upon a verdict convicting defendant of the crimes of grand larceny in the third degree (two counts), scheme to defraud in the first degree (two counts) and petit larceny (eight counts).

Following a jury trial, defendant was convicted of two counts each of scheme to defraud in the first degree and grand larceny in the third degree and eight counts of petit larceny. The charges resulted from evidence that, during the years 1998 through 2001, defendant engaged in an ongoing pattern of fraudulent conduct involving logging agreements with more than 10 property owners (or their representatives) in Sullivan County. The property owners all related similar stories at trial that they had agreed to let defendant log their land and agreed on how they would split the proceeds and to other terms, and they had received assurances as to defendant's logging practices; defendant thereafter took timber from their land and then disappeared, often leaving their property in considerable disarray, and failed to pay anything to most of the owners and made only partial payments to three. Many of the victims were elderly or lived outside the county. Defendant did not return phone calls, disconnected his phone and moved repeatedly, frustrating attempts by the victims to obtain payment from or make contact with him after he removed the timber. The value of the timber taken from each of the properties at the time it was removed was established through testimony of forest rangers employed by the Department of Environmental Conservation, who counted and measured the tree stumps on each property, identified the species of trees taken and, from these measurements, computed the "board feet" value of each variety. They then calculated the total value of timber taken using the price lists for each year from Klein & Son Logging, identified as the largest purchaser and reseller of timber from independent loggers in that area of the state. Defendant's defense theory, rejected by the jury, was that his conduct amounted to mere nonperformance of contract obligations, civil wrongs, which followed his business failings, and that he lacked the necessary criminal intent. Upon his convictions, defendant was sentenced, as a second felony offender, to an aggregate prison term of 4 to 8 years. Defendant now appeals, raising a plethora of issues, none of which warrants disturbing the jury verdict or sentence.

Initially, there is no merit to defendant's challenges to the legal sufficiency and weight of the evidence supporting his convictions. Regarding the scheme to defraud counts, defendant argues that the proof failed to show that he engaged in a planned pattern of conduct designed to defraud these landowners, instead only establishing isolated, ad hoc acts against multiple, identifiable victims. Viewing the evidence in a light most favorable to the People, we disagree, finding that the evidence established that defendant engaged in a "systematic ongoing course of conduct with intent to defraud [10] or more

persons or to obtain property from [10] or more persons by false or fraudulent pretenses, representations or promises" and so obtained property from several persons (Penal Law § 190.65 [1] [a]; *see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Burks*, 254 AD2d 738, 739 [1998]).

Defendant's "single, unitary over-all scheme to defraud," while not sophisticated or complex, was demonstrated by the "common techniques, misrepresentations and omissions of material facts employed in all transactions" (*People v First Meridian Planning Corp.*, 86 NY2d 608, 616-617 [1995]). Defendant's intent was readily inferable from the overall and protracted pattern of his conduct (*see People v Bastian*, 294 AD2d 882, 883 [2002], *lv denied* 98 NY2d 694 [2002]). Also, the proof adduced amply demonstrated that defendant's scheme resulted in his obtaining property with a value in excess of $1,000 (*see* Penal Law § 190.65 [1] [b]). Further, while a different verdict on the scheme to defraud counts would not have been unreasonable, upon our independent review of the evidence we cannot agree that the verdict was contrary to the weight of credible evidence (*see People v Bleakley, supra*). Neither the fact that defendant partially paid three of the landowners, which enabled him to continue removing timber where the owners were overseeing the logging, nor the facts that some of the victims initiated the contact with defendant, that many of the victims did not see defendant remove the timber or the lack of sophistication in defendant's scheme, undermines the compelling, consistent evidence that supports all aspects of the verdict.

On the grand larceny counts, Darryl Rivers, who resided in New York City, testified that he entered into a written contract in which defendant agreed to pay him $2,000 to log a defined, limited section of his Sullivan County property while he was present, specifically excluding a certain section and tree; defendant thereafter logged in Rivers' absence, taking lumber from property he had been instructed not to log, later valued at $16,491. Keith Manzolillo testified that he entered into a written contract in which defendant agreed to log his land and split the proceeds evenly, and defendant thereafter took timber valued in excess of $31,000. Defendant failed to pay either owner the proceeds, left their properties in shambles and failed to respond to their persistent efforts to contact him or obtain payment. There was legally sufficient evidence that, in each case, defendant stole property (timber) valued in excess of $3,000 and did so with the requisite intent (*see* Penal Law §§ 155.35, 155.05 [1]; § 155.00 [3], [4]; *see also People v Jennings*, 69 NY2d 103, 108 [1986]; *People v Bleakley, supra* at 495). As a different find-

ing would have been unreasonable, the jury verdict is supported by the weight of credible evidence.

Addressing the petit larceny convictions, the testimony established that defendant entered agreements with and took timber from eight additional property owners, valued between $9,000 and in excess of $23,000, paying the owners little or nothing for their timber. The evidence was legally sufficient to establish defendant's intent and guilt of petit larceny, and the verdict is not contrary to the weight of credible evidence (*see* Penal Law §§ 155.25, 155.05 [1]; § 155.00 [3], [4]; *People v Bleakley, supra* at 490).

Further, the People pursued the case as a general larceny (Penal Law § 155.05 [1]), and did not limit it to a larceny by false promise theory in either the indictment, bill of particulars or at trial, and the defense never requested that they do so (*see* Penal Law § 155.05 [2] [d]; § 155.45; *People v Norman*, 85 NY2d 609 [1995]; *cf. People v Kramer*, 92 NY2d 529, 542-543 [1998]). Contrary to defendant's claims raised for the first time on appeal, the People were not required to satisfy, and County Court was not required to charge, the higher moral certainty standard of proof which, notably, governs the trier of fact and is not the appropriate standard for appellate review of the sufficiency of the People's proof (*see* Penal Law § 155.45; *People v Norman, supra* at 620). As the proof satisfied at least one other theory of larceny (*see* Penal Law § 155.05 [2]), the fact that the evidence also supported larceny by false promise "is of no moment" (*People v Norman, supra* at 625).

Defendant's challenge to the valuation of the timber is confined to the contention, raised for the first time on appeal, that the People failed to lay a proper foundation for the timber price lists used to calculate the value of the timber. We have reviewed this claim and find that it lacks merit. Price lists are recognized as evidence of value, and testimony by representatives of the forestry division of the Department of Environmental Conservation laid a sufficient foundation for their reliance upon these particular lists in valuing the stolen timber and for their introduction into evidence at trial (*see People v Brown [Campbell]*, 275 AD2d 668 [2000], *lvs denied* 96 NY2d 732, 733 [2001]; *People v Gross*, 51 AD2d 191, 195-196 [1976]; *see also People v Irrizari*, 5 NY2d 142, 147 [1959]; *cf. People v Alicea*, 25 NY2d 685 [1969]; *People v Watkins*, 233 AD2d 904, 905 [1996]).

Next, we reject defendant's argument that he was deprived of a fair trial by County Court's denial of his pretrial motion to preclude the victims from recounting certain statements that defendant made to them during his commission of these crimes,

which defendant argued constituted prior bad acts or uncharged crimes. At trial, four of the victims testified that, at the time they entered into an agreement with defendant or after their repeated efforts to be paid by defendant, defendant made various statements that he was a veteran, he carried a gun, he was friends with a local judge and was "untouchable," and that he had been shot and had shot or killed a guy in a nearby town. County Court repeatedly instructed the jury that the truth of defendant's statements was not relevant and that they were admitted solely on the issue of defendant's state of mind. The prosecutor never suggested or attempted to prove that these uncharged incidents, or bad acts, had occurred but, rather, offered them as proof of defendant's intent in perpetrating this scheme and taking the victims' timber (cf. People v Bastian, 294 AD2d 882, 883 [2002], supra; People v Vandenburg, 254 AD2d 532, 534 [1998], lv denied 93 NY2d 858 [1999]).

County Court correctly ruled that since defendant's criminal intent was a central issue, evidence that defendant made veiled threats to the victims and sought to intimidate them as part of his perpetration of this scheme was relevant and admissible. While we agree with defendant's argument that the court should have directed the witnesses not to repeat the racist reference used by defendant in some of these statements—as that was not relevant to defendant's intent in perpetrating these crimes and was unnecessarily prejudicial—we find that any error in that regard was harmless (see People v Crimmins, 36 NY2d 230, 240-241 [1975]).

Also without merit is defendant's contention that he was deprived of the effective assistance of counsel, a claim largely premised upon issues already found herein to lack merit (see People v Henry, 95 NY2d 563, 566 [2000]; People v Benevento, 91 NY2d 708, 714 [1998]; People v Baldi, 54 NY2d 137, 147 [1981]). Defense counsel's vigorous representation of defendant is reflected in his motion practice, which resulted in certain charges being dismissed and others being reduced, the cogent defense theory articulated in opening and closing statements, effective evidentiary objections and cross-examination of witnesses, and a jury verdict on reduced counts and acquittal on others.

Finally, in view of the nefarious character of defendant's scheme perpetrated against so many victims over a four-year period of time and his past history of larcenous behavior, we do not find an abuse of sentencing discretion or extraordinary circumstances which would warrant a reduction of the sentence in the interest of justice (see People v George, 261 AD2d 711, 715

[1999], *lv denied* 93 NY2d 1018 [1999]; *People v Palmer*, 108 AD2d 545 [1985]).

Defendant's remaining contentions are similarly unavailing.

Mercure, J.P., Peters and Rose, JJ., concur. Ordered that the judgment is affirmed.