■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID ARNOLD and HERITAGE NURSING HOME, INC., Appellants. [790 NYS2d 291]—

Peters, J. Appeal from a judgment of the Supreme Court (Sirkin, J.), rendered March 25, 2004 in Albany County, convicting defendants following a nonjury trial of the crimes of grand larceny in the first degree and grand larceny in the second degree (three counts).

In 1991, defendant David Arnold assumed administrative duties at defendant Heritage Nursing Home, Inc., located in Pennsylvania; he became its principal operator in 1995. At all relevant times, Heritage was a participant in both the New York

and Pennsylvania Medicaid programs and was reimbursed through such programs for services provided to each state's residents who were Medicaid recipients residing within its facility. Under the New York program, Heritage's daily reimbursement rate was established through the use of Pennsylvania's Medicaid rate (hereinafter the home state rate), with add-ons for ancillary services which were not included in the home state's rate (*see* 18 NYCRR 527.1 [a] [2]).

In 1993, Arnold, on behalf of Heritage, submitted rate reports to New York setting forth the home state rate. He thereafter certified that Heritage was also going to provide physical, occupational and speech therapy services, as well as dental services, to New York Medicaid recipients but that the cost of such services was not included in the home state rate. Based upon these reports, New York calculated Heritage's daily rate and then included add-on payments for the specified ancillary services.

In 1998, the People advised defendants that it was reviewing services provided to New York Medicaid recipients by out-of-state providers. It requested that defendants make available for inspection all patient records dating back to January 1, 1992.[1] Following an investigation, defendants were each charged, by a four-count superior court information, with two counts of grand larceny in the first degree and two counts of grand larceny in the second degree. Count one alleged that between January 1, 1991 and December 31, 2000, defendants submitted numerous claims for services provided to New York Medicaid recipients which falsely certified that the amounts listed thereon were due when defendants were receiving duplicate reimbursement for certain ancillary services. Counts two and three alleged that between January 1, 1991 and December 31, 1997, defendants submitted numerous claims for occupational and speech therapy services and falsely certified that the entire amounts listed therein were due even though such services were not provided to New York Medicaid recipients. Finally, count four alleged that between January 1, 1991 and December 31, 2000, defendants submitted claims for dental services and falsely certified that the entire amounts listed thereon were due even though such services were not provided.

Following a nonjury trial, defendants were convicted of the crime of grand larceny in the first degree on the first count and the crime of grand larceny in the second degree on each of the remaining counts. Heritage was fined $10,000 on the first degree

---

1. Although it is undisputed that defendants provided those records for a period of time, Arnold later destroyed a portion of them.

grand larceny count and given an unconditional discharge for the remaining counts. Arnold was sentenced to a term of imprisonment aggregating 3 to 12 years, and was ordered to pay restitution in the amount of $1 million. Defendants appeal and we affirm.

Contrary to defendants' contention, counts two and three of the indictment are not multiplicitous since "each count requires proof of an additional fact that the other does not" (*People v Kindlon*, 217 AD2d 793, 795 [1995], *lv denied* 86 NY2d 844 [1995]); count one required proof that defendants falsely certified to New York that Pennsylvania did not reimburse the costs of certain ancillary services whereas counts two and three required proof that defendants falsely certified that they were providing these services. Nor do we find counts two and three to be duplicitous of count one. Although counts two and three each charged defendants with submitting numerous claims for ancillary services, each count alleges a generalized scheme to unlawfully obtain reimbursement for a particular therapy service. "Where multiple acts constitute one scheme to commit grand larceny against a single victim . . . [and] each count allege[s] a separate scheme to commit grand larceny over a period of time" (*id.* at 795 [citation omitted]), the count is not duplicitous (*see* CPL 200.30 [1]).

We also find no merit to defendants' contention that the charges are time-barred under CPL 30.10. It is well settled that "grand larceny may be charged as a series of single larcenies governed by a common fraudulent scheme or plan even though the successive takings extended over a long period of time"[2] (*People v Rosich*, 170 AD2d 703, 703 [1991], *lv denied* 77 NY2d 1000 [1991]; *see People v Cox*, 286 NY 137, 142-143 [1941]).

Addressing the sufficiency of the evidence, we find a "valid line of reasoning and permissible inferences" (*People v Bleakley*, 69 NY2d 490, 495 [1987]) which rationally led Supreme Court, as the factfinder, to the conclusion that defendants intentionally undertook to obtain additional reimbursement for the costs of physical, occupational and speech therapy services, as well as dental services, by falsely certifying to New York that these

---

2. The evidence demonstrated that defendants repeatedly certified the information alleged in count one at least until April 1999. With respect to counts two through four, they certified that information until at least November 1997 (*see People v First Meridian Planning Corp.*, 86 NY2d 608, 615-616 [1995]).

costs were not included in the home state rate.[3] Several witnesses, including a witness for the defense, testified that the applicable Pennsylvania regulations (*see* 55 Pa Code § 1181.212 [c] [16]) provided for reimbursement for these services during all relevant times. Testimony confirmed that Arnold was familiar with these regulations, understood the schedule for allowable costs and had utilized the provider manual and these regulations in other efforts at reimbursement. The evidence also showed that Arnold attended at least one educational seminar in his administrative capacity during which the Pennsylvania billing and reimbursement practices were explained. Defendants further submitted annual cost reports to New York identifying these services as Heritage's ancillary costs for the previous year[4] while, at the same time, submitting rate reports to Pennsylvania seeking the same reimbursement. In the New York reports, Arnold certified that these services were not included in the home state rate but were services that defendants "will provide additionally under your proposed rate for New York . . . patients." Viewing this evidence in a light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), a reasonable factfinder could find that defendants intentionally submitted false claims to New York (*see People v McDonald*, 88 NY2d 281, 287-288 [1996]).

We reach a similar conclusion regarding counts two through four. Sufficient evidence demonstrated that defendants made false representations of material fact to New York officials regarding the therapy services which they were allegedly providing to their residents and upon which New York relied. For the seven-year period set forth in counts two and three, defendants spent a total of $250 for occupational therapy services and $375

---

**3.** Under Penal Law § 155.05, "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he [or she] wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]). A defendant commits larceny by false pretenses when he or she "obtain[s] possession of money of another by means of an intentional false material statement about a past or presently existing fact upon which the victim relied in parting with the money" (*People v Starks*, 238 AD2d 621, 622 [1997], *lv denied* 91 NY2d 836 [1997]; *see* Penal Law § 155.05 [2] [a]; *People v Churchill*, 47 NY2d 151, 157-158 [1979]). In order to prove the crime of grand larceny in the first degree, the People had to establish, beyond a reasonable doubt, that defendants stole property having a value that exceeded $1 million (*see* Penal Law § 155.42). To prove the crime of grand larceny in the second degree, the People had to show that defendants stole property having a value that exceeded $50,000 (*see* Penal Law § 155.40 [1]).

**4.** Although defendants received no actual reimbursement for therapy costs until 1996, the format of the reports made it clear that the costs were allowable and reimbursable.

for speech therapy services, whereas in the 10-year period set forth in count four, defendants spent approximately $10,000 for dental expenses provided to 48 out of its 507 patients; defendants never had an outside provider conduct routine dental exams and only occasionally contracted for off-site services until 1997, when they were cited by the Pennsylvania Department of Health. Arnold was alerted to the needs of these residents by his attendance at daily management meetings and testimony established that between 1991 and 1997, he indiscriminately placed standing orders in patients' files directing that no therapies be ordered. The record reveals that the staff stopped ordering these services, even when they were needed, "unless it was urgent." On this proof, sufficient evidence demonstrated that defendants failed to provide necessary medical services (*see People v Holmberg*, 243 AD2d 893, 894 [1997], *lv denied* 91 NY2d 874 [1997]).

Next addressing defendants' contention that the precise amount of the alleged larceny is an essential element of each count, we note that "it is only necessary that the [factfinder] have a reasonable basis for inferring, rather than speculating, that the value of the property exceeded the statutory threshold" (*People v Sheehy*, 274 AD2d 844, 845 [2000], *lv denied* 95 NY2d 938 [2000]; *see People v Adams*, 8 AD3d 893, 893 [2004]). From the testimony of the fiscal analyst from the New York State Department of Health and a supervising auditor from the New York State Attorney General's Medicaid Fraud Control Unit, a reasonable basis was established, through a 1992 survey, to determine the average daily cost of ancillary services provided to each out-of-state Medicaid patient. Such amount was then divided into its component parts, identifying costs for the various therapies and dental care. With a value to each component reflecting its weighted average percentage of that sum, the experts applied these percentages to the daily per capita costs of those services at Heritage, multiplied by the number of patient days for which defendants received reimbursement.

Even assuming that a contrary verdict is not unreasonable, we find that upon examining the evidence in a neutral light, " 'weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], *supra*, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]), and according due deference to the factfinder's resolution of any credibility issues, there is no error (*see People v Griffin*, 300 AD2d 743, 744 [2002], *lv denied* 99 NY2d 614 [2003]).

Having reviewed defendants' remaining contentions and finding them either unpreserved or lacking in merit, we affirm.

Cardona, P.J., Crew III, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the Supreme Court for further proceedings pursuant to CPL 460.50 (5).