Mulvey, J.
Appeal from a judgment of the County Court of Schenectady County (Milano, J.), rendered August 20, 2015, convicting defendant following a nonjury trial of the crimes of scheme to defraud in the first degree, grand larceny in the third degree (two counts) and grand larceny in the fourth degree.
In October 2014, defendant was charged in an 11-count indictment with one count of scheme to defraud in the first degree, two counts of criminal possession of a forged instrument in the second degree, five counts of grand larceny in the fourth degree and three counts of grand larceny in the third degree. In May 2015, after a nonjury trial, County Court found defendant guilty of one count of scheme to defraud in the first degree, two counts of criminal possession of a forged instrument in the second degree, two counts of grand larceny in the third degree and one count of grand larceny in the fourth degree. Prior to sentencing, County Court dismissed the two counts of criminal possession of a forged instrument in the second degree. Defendant was then sentenced to an aggregate prison term of 5V2 to 11 years on the remaining counts and ordered to pay restitution to the victims in the amount of $38,500. Defendant now appeals.
On appeal, defendant first alleges that his convictions for grand larceny in the third degree (counts 4 and 8), grand larceny in the fourth degree (count 6) and scheme to defraud in the first degree (count 1) were not supported by legally suf *1400 ficient evidence and were against the weight of the evidence. Initially we find that, because defendant’s motions at the close of the People’s case and again after the close of his proof were not directed at an alleged error, but, rather, were general in their scope, defendant failed to preserve his challenge to the legal sufficiency of the evidence (see People v Gray, 86 NY2d 10, 19 [1995]; People v Farnham, 136 AD3d 1215, 1215 [2016], lv denied 28 NY3d 929 [2016]; People v Sudler, 75 AD3d 901, 904 [2010], lv denied 15 NY3d 956 [2010]). “However, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes” (People v Cruz, 131 AD3d 724, 725 [2015], lv denied 26 NY3d 1087 [2015]; see People v Thiel, 134 AD3d 1237, 1239-1240 [2015], lv denied 27 NY3d 1156 [2016]). If “a different verdict would not have been unreasonable, we will weigh the probative force of conflicting testimony and the strength of conflicting inferences in determining whether the verdict is against the weight of the evidence” (People v Shoemaker, 119 AD3d 1073, 1074 [2014], lv denied 25 NY3d 992 [2015]; see People v Reeves, 124 AD3d 1068, 1068 [2015], lv denied 25 NY3d 1076 [2015]; People v Farnham, 136 AD3d at 1215-1216; see generally People v Hardy, 57 AD3d 1100, 1101-1102 [2008], lv denied 12 NY3d 784 [2009]). “Issues of credibility and the weight to accord testimony are matters to be resolved by the trier of fact, who is free to accept or reject any part of the testimony presented” (People v Rosa, 57 AD3d 1018, 1019 [2008], lv denied 12 NY3d 762 [2009] [citations omitted]; see People v Beliard, 101 AD3d 1236, 1239 [2012], lv denied 20 NY3d 1096 [2013]).
“A person is guilty of grand larceny in the third degree when he or she steals property and . . . when the value of the property exceeds [$3,000]” (Penal Law § 155.35 [1]). As relevant here, “[a] person is guilty of grand larceny in the fourth degree when he [or she] steals property and when . . . [t]he value of the property exceeds [$100] and the property consists of a motor vehicle . . . other than a motorcycle” (Penal Law § 155.30 [8]). “A person is guilty of a scheme to defraud in the first degree when he or she: . . . engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of [$1,000] from one or more such persons” (Penal Law § 190.65 [1] M).
Count 4 of the indictment, charging defendant with grand *1401 larceny in the third degree, involved defendant stealing over $9,000 from Michael Mongillo. Mongillo testified that he and defendant became “best budd[ies].” On two occasions, under the pretense of promoting goodwill toward Ernie Richute, a mutual friend, defendant asked Mongillo for sums of $1,000, then $3,500, promising to repay it, which sums Mongillo gave to defendant in cash, “trusting] him implicitly.” Thereafter, defendant also asked Mongillo for a loan “to save [defendant’s] shop from back taxes.” Mongillo took out a loan from a bank, using a 1957 Chevrolet allegedly owned by defendant as collateral, and gave defendant $5,000 in cash. The 1957 Chevrolet, however, was registered in Ralph Putrock’s name and somehow defendant transferred the registration to his name, and then transferred it to Mongillo to secure the loan. Mongillo also testified about giving defendant “$3,500 plus . . . [$] 150 to [$]200 a week” for a motorcycle, which he never received. Richute, a retired police sergeant and friend of defendant, testified that he had never received any money from defendant and, in fact, never had a conversation with defendant about needing to borrow money.
Count 6 of the indictment charged defendant with grand larceny in the fourth degree for stealing a 1976 Chevrolet Nova from Jolene Rust. She testified that she purchased a yellow 1976 Chevrolet Nova from Putrock and, after registering the vehicle, she eventually stored it at defendant’s garage. She also testified that defendant required her to give him the title to her vehicle in order to store it at his shop. Although the title to the vehicle was in her name, Rust testified that it had been sold without her permission. Bruce DeSarbo, an acquaintance of defendant, testified that he bought a yellow 1976 Chevrolet Nova from defendant, who had informed DeSarbo that he was selling it for Putrock. Rust testified that she did not report the unlawful sale of her car out of fear of repercussions.
Count 8 of the indictment charged grand larceny in the third degree in connection with defendant’s theft of over $10,000 from James Belcher. Belcher testified that he owned a 1966 Chevrolet Chevelle and, in 2010, contacted defendant about working on the vehicle. Defendant agreed to do the work for $4,500. Belcher put $3,000 cash down as a deposit, and, although defendant began to work on the car, after a time, Belcher noticed that the work “kind of went by the wayside.” Defendant then told Belcher that he was having financial trouble and requested the remainder of payment; Belcher gave defendant $1,000, holding off on $500 because he noted that defendant “got nothing done” on his vehicle and continually *1402 made excuses. Belcher further testified that defendant helped him order 60 parts for the vehicle from a Pennsylvania aftermarket company at a cost to Belcher of approximately $10,000. He also testified that, out of the 60 parts ordered, he received five, representing $100 of the $10,000 he paid to defendant. When Belcher attempted to recover his vehicle from defendant’s garage and procure the remaining 55 parts that defendant had purportedly ordered from the aftermarket company, he learned that defendant had never ordered the parts.
With regard to count 1, charging scheme to defraud in the first degree, defendant operated an auto body garage, also used as a clubhouse, where acquaintances, neighbors and friends worked on classic cars. Over the course of three years, defendant manipulated acquaintances and friends out of money and property by obtaining money from individuals under false pretenses and never repaying it, selling vehicles stored at his garage to third parties without permission from the owners and purporting to buy replacement parts for their vehicles, but never purchasing said parts. A host of witnesses established that, repeatedly and over a three-year period, defendant bilked his friends, neighbors and customers out of thousands of dollars in money, property and services by a pattern of preying upon and manipulating their ignorance, sympathies and their trust.
Defendant’s witnesses did not contradict the evidence upon which defendant was convicted. Defendant testified in his own defense and offered his version of events, which, after considering all of the evidence and observing the witnesses’ demeanor, County Court properly disregarded. Weighing the evidence in a neutral light and deferring to County Court’s first-hand credibility assessments, we find that, based on the record before us, the weight of the credible evidence amply supported the verdict (see People v Scaringe, 137 AD3d 1409, 1416 [2016], lv denied 28 NY3d 936 [2016]; People v Farnham, 136 AD3d at 1217; People v Thiel, 134 AD3d at 1239-1240; People v Rosa, 57 AD3d at 1020).
As to defendant’s argument that his procurement of $9,500 in installments from Mongillo cannot support his conviction for grand larceny in the third degree, the proof disclosed “common techniques, misrepresentations and omissions of material facts employed” (People v Houghtaling, 14 AD3d 879, 881 [2005] [internal quotation marks and citations omitted], lv denied 4 NY3d 831 [2005]; accord People v Vomvos, 137 AD3d 1172, 1173 [2016], lv denied 27 NY3d 1140 [2016]) by defendant— *1403 particularly defendant’s play on Mongillo’s friendship and sympathies in obtaining money for himself or in portraying Richute as desperately in need of money. Moreover, when “committed pursuant to a single intent and common plan” (People v Buckley, 75 NY2d 843, 846 [1990]), several small larcenies from a single person may properly support a conviction of grand larceny (see People v Arnold, 15 AD3d 783, 785 [2005], lvs denied 4 NY3d 851, 853 [2005]). We find defendant’s argument in this regard to be without merit.
Defendant next argues that he received the ineffective assistance of counsel. “What constitutes effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation” (People v Baldi, 54 NY2d 137, 146 [1981] [citation omitted]; see People v Carnevale, 101 AD3d 1375, 1378 [2012]). “[T]rial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness. So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met” (People v Baldi, 54 NY2d at 146-147 [citations omitted]). “In applying this standard, counsel’s efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective” (People v Benevento, 91 NY2d 708, 712 [1998] [citation omitted]), as “[t]he Constitution guarantees the accused a fair trial, not necessarily a perfect one” (id. at 712; accord People v Turner, 5 NY3d 476, 480 [2005]). “[T]o establish ineffective assistance, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel’s allegedly deficient conduct” (People v Colburn, 123 AD3d 1292, 1296 [2014] [internal quotation marks and citations omitted], lv denied 25 NY3d 950 [2015]). A defendant’s “disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice” to demonstrate a lack of meaningful representation (People v Hook, 80 AD3d 881, 883 [2011] [internal quotation marks and citations omitted], lv denied 17 NY3d 806 [2011]).
With regard to defendant’s claim that counsel was ineffective because he failed to request a bill of particulars, where an “indictment adequately apprise [s] [a] defendant of the charges against him [or her] with sufficient specificity” as to enable the defendant to develop and mount a defense, “no bill of particulars [i]s required” (People v Elliot, 299 AD2d 731, 732 [2002]; see CPL 200.95 [1] [a]). “A bill of particulars serves to clarify *1404 the pleading; it is not a discovery device” (People v Davis, 41 NY2d 678, 679-680 [1977]). A review of the indictment—naming the property at issue and the threshold amounts that defendant was accused of stealing—demonstrates that defendant was sufficiently apprised of the circumstances giving rise to the charges against him (see People v Davis, 41 NY2d at 679-680; People v Moyer, 75 AD3d 1004, 1007 [2010]; People v Elliot, 299 AD2d at 732). Defendant and the People entered into a written voluntary disclosure agreement, thereby obviating unnecessary motion practice by both sides. That agreement provided that defendant would “not submit requests, demands or motions” pursuant to CPL 200.95—that is for a bill of particulars—and, in exchange for that concession, defendant received expedited discovery without the necessity of motion practice and also an extension of time to serve certain notices. Defense counsel may have determined that it was to defendant’s advantage to receive this expedited and expansive discovery material well in advance of trial, instead of just before trial, and, arguably, defendant may have received more discovery materials earlier in the case than he otherwise would have received. “[I]t is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for counsel’s failure to request [a bill of particulars]” (People v Rivera, 71 NY2d 705, 709 [1988]). On the record before us, we are unable to conclude that defendant has shown an absence of a strategic or other explanation for counsel’s decision not to request a bill of particulars, and, therefore, we do not find that counsel’s failure to do so rendered his assistance ineffective (see People v Moyer, 75 AD3d at 1007). We have reviewed the other claims made by defendant on appeal regarding his counsel’s representation, including his arguments surrounding the dismissal of two counts of the indictment as duplicitous, the alleged failure to move to dismiss two counts of the indictment charging possession of a forged instrument and the alleged failure to introduce evidence surrounding the loans given to him, and find all arguments unpersuasive and without merit. As to the trial as a whole, defendant was not prejudiced and received the effective assistance of counsel (see People v Alford, 33 AD3d 1014, 1015 [2006]).
Defendant next contends that his sentence was harsh and excessive. “[A] sentencing decision is a matter committed to the exercise of the court’s discretion and ... it can be made only after careful consideration of all facts available at the time of sentencing” (People v Farrar, 52 NY2d 302, 305 [1981] [emphasis omitted]; see People v Houghtaling, 14 AD3d at 883-884). For all of the crimes of which he was convicted, defend *1405 ant faced a minimum of four years and a maximum of 22 years in prison; he was sentenced to a minimum term only IV2 years over the statutory minimum and to a maximum term half of what could have been imposed. As defendant’s sentence was “well within the applicable statutory parameters” (People v Simon, 180 AD2d 866, 866 [1992], lv denied 80 NY2d 838 [1992]; see Penal Law §§ 70.00 [1], [2] [d], [e]; [3] [b]; 155.30, 155.35, 190.65), and we find no abuse of discretion by County Court or extraordinary circumstances, the sentence will not be disturbed (see People v Hawes, 298 AD2d 706, 709 [2002], lv denied 99 NY2d 582 [2003]).
As to defendant’s argument that County Court erred in ordering restitution without a hearing, Penal Law § 60.27 (1) provides that a “court shall consider restitution or reparation to the victim of the crime and may require restitution or reparation as part of the sentence imposed.” Penal Law § 60.27 (2) further provides that “[w]henever the court requires restitution or reparation to be made, . . . upon request by the defendant, the court must conduct a hearing upon the issue in accordance with the procedure set forth in [CPL 400.30]” (see People v Connolly, 27 NY3d 355, 359 [2016]; compare People v Drew, 16 AD3d 840, 841 [2005]). At sentencing, defendant specifically requested a hearing on restitution. County Court declined to grant the request, and this was error (see Penal Law § 60.27 [2]; People v Connolly, 27 NY3d at 359; People v Drew, 16 AD3d at 841). The matter must therefore be remitted for a restitution hearing.
Peters, P.J., McCarthy, Lynch and Rose, JJ., concur.
Ordered that the judgment is modified, on the law, by reversing so much thereof as ordered restitution; matter remitted to the County Court of Schenectady County for further proceedings pursuant to CPL 460.50 (5) and for a restitution hearing; and, as so modified, affirmed.