People v Mazzeo (2022 NY Slip Op 01068)





People v Mazzeo


2022 NY Slip Op 01068


Decided on February 17, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 17, 2022

110332 111518
[*1]The People of the State of New York, Respondent,
v
David A. Mazzeo, Appellant.

Calendar Date:January 14, 2022

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Fisher, JJ.

Danielle Neroni Reilly, Albany, for appellant.
Letitia James, Attorney General, New York City (Michelle Maerov of counsel), for respondent.



Aarons, J.
Appeals (1) from a judgment of the Supreme Court (Breslin, J.), rendered April 12, 2018 in Albany County, upon a verdict convicting defendant of the crimes of money laundering in the second degree, scheme to defraud in the first degree, grand larceny in the third degree (three counts), grand larceny in the fourth degree, securities fraud, offering a false instrument for filing in the first degree and criminal tax fraud in the fourth degree, (2) from two judgments of said court, rendered July 10, 2018 and November 19, 2018 in Albany County, which resentenced defendant, and (3) by permission, from an order of said court, entered June 25, 2019 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was previously convicted, upon his guilty plea, of various larceny-related crimes and was sentenced to a term of probation. In connection therewith, defendant was ordered to pay restitution and also incurred substantial legal fees. Defendant thereafter represented himself to various individuals as a developer and/or loan broker in the coal/energy industry. These individuals (hereinafter referred to as victims A, B and C), as well as a company, invested money with defendant, which was transferred to an account in the name of codefendant Michael Caruso. Defendant, however, used the money to pay for the owed restitution, his legal fees and other personal purchases.
An investigation by the Criminal Enforcement and Financial Crimes Bureau of the Office of the Attorney General Division of Criminal Justice ensued. This investigation led to defendant and the codefendant being charged in an indictment with various crimes. The Attorney General prosecuted the matter and, following a joint trial with the codefendant, defendant was convicted of money laundering in the second degree, scheme to defraud in the first degree, three counts of grand larceny in the third degree, grand larceny in the fourth degree, securities fraud, offering a false instrument for filing in the first degree and criminal tax fraud in the fourth degree. Supreme Court thereafter sentenced defendant to a term of imprisonment. Defendant was then resentenced twice in order to correct errors in the original sentence. Defendant, pro se, moved to set aside the initial judgment of conviction under CPL article 440. The court denied the motion without a hearing. Defendant appeals from the judgments of conviction and, by permission, from the order denying his CPL article 440 motion.
Defendant argues that the verdict was not supported by legally sufficient evidence. Defendant, however, did not preserve this argument because he only made a general motion to dismiss at the close of the People's case-in-chief (see People v Rahaman, 189 AD3d 1709, 1710 [2020], lv denied 36 NY3d 1059 [2021]; People v Napoli, 167 AD3d 1080, 1080 [2018]). Defendant nevertheless also argues that the verdict was against the weight [*2]of the evidence and, in view of this argument, "we necessarily consider whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Coleman, 144 AD3d 1197, 1198 [2016] [internal quotation marks and citation omitted]; see People v Smith, 193 AD3d 1260, 1261 [2021], lv denied 37 NY3d 968 [2021]). Where, as here, a contrary result would not have been unreasonable, "we must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Walker, 190 AD3d 1102, 1103 [2021] [internal quotation marks and citation omitted], lvs denied 37 NY3d 958, 961 [2021]).
The trial evidence discloses that, in 2012, victim A was introduced to defendant, who presented him with an investment opportunity. Specifically, victim A was offered a one-third share in a limited liability company in exchange for a fee of $40,000. Defendant, however, was not a shareholder of this limited liability company. Rather, an attorney, who previously represented defendant in an unrelated matter, created this limited liability company so that he could go into business with defendant and he was the sole shareholder. The limited liability company also had no assets or pending deals. Notwithstanding the foregoing, according to victim A, defendant represented that the limited liability company could identify coal resources for purchase and provided marketing materials about various assets and deals involving the limited liability company. Even though victim A learned from the attorney that defendant did not have the authority to sell shares of the limited liability company, victim A provided defendant with more funds based upon reassurances from defendant that he would "work it out." Victim A had money wired to the codefendant's account. Victim A testified that he also provided defendant with funds so that defendant could attend a business trip in a foreign country, unaware of the fact that defendant was on probation and was prohibited from foreign travel. Victim A further testified that he did not know that the funds that he provided to defendant were being used for defendant's personal expenses or debts.
Victim B testified that he gave defendant funds for the purpose of research for coal exports and for the development of a coal wash plant. According to victim B, defendant represented that he needed the money for travel to a foreign country for research. Victim B wired the money to the codefendant's account, but defendant took the money from there and used it to pay his personal debts. Victim B stated that he did not authorize defendant to use this money for personal purposes. Victim C testified that he ran a company that built coal plants. According to victim C, defendant held himself out as a "broker." Victim C gave defendant money for the purpose of securing natural resource [*3]deals. The money was wired from victim C's company account to the codefendant's account, and defendant used it to satisfy his personal debts and expenses.
Defendant assails the conviction for scheme to defraud in the first degree on the basis that the People did not prove beyond a reasonable doubt that he intended to defraud the victims or that he made fraudulent misrepresentations. The evidence, however, established that defendant made similar false promises to the victims when seeking their money, that the requested money was deposited into the codefendant's account and that defendant used the money from this account for personal purposes. The evidence also established that the money given by the victims was not used for the purposes as represented to them by defendant. In view of defendant's "common techniques, misrepresentations and omissions of material facts employed in all transactions" with the various victims (People v Houghtaling, 14 AD3d 879, 881 [2005] [internal quotation marks and citation omitted], lv denied 4 NY3d 831 [2005]), the conviction of scheme to defraud in the first degree was supported by the weight of the evidence (see People v Perillo, 144 AD3d 1399, 1402 [2016], lvs denied 29 NY3d 948, 951 [2017]; People v DeDeo, 59 AD3d 846, 850-851 [2009], lv denied 12 NY3d 782 [2009]; People v Korsen, 167 AD2d 180, 181 [1990], lvs denied 77 NY2d 962, 966 [1991]). For similar reasons, the convictions for grand larceny in the third degree, upon viewing the evidence in a neutral light, are also supported by the weight of the evidence (see People v Zeller, 151 AD3d 1272, 1274-1275 [2017]).
Defendant's challenge to the conviction of grand larceny in the fourth degree rests on the premise that the amount stolen from victim C did not exceed $1,000. "[W]here the stolen property is cash from an account . . ., the value of the amount stolen is the amount of the defendant's withdrawals, offset by legitimate starting balances" (People v Sanon, 179 AD3d 1151, 1153 [2020] [internal quotation marks, brackets and citation omitted], lv denied 35 NY3d 973 [2020]). The record reflects that, when victim C wired $1,000, the bank charged him a fee of $20.99 for such wire transfer. Because the bank fee was not withdrawn by defendant but, rather, received by the bank, the $20.99 should not be considered in connection with count 6 charging defendant with grand larceny in the fourth degree. That said, a person is guilty of grand larceny in the fourth degree when the stolen property "exceeds [$1,000]" (Penal Law § 155.30 [1]). Without the bank fee, the amount stolen does not exceed the required monetary threshold. Accordingly, count 6 of the indictment charging defendant with grand larceny in the fourth degree must be dismissed.
Regarding the conviction for money laundering in the second degree, the record reveals that defendant instructed the victims to wire the money to the codefendant's account. From that account, which defendant was not named [*4]on, defendant used the money for personal purposes. In view of this evidence, the jury's determination on this conviction was supported by the weight of the evidence (cf. People v Haggerty, 103 AD3d 438, 439 [2013], affd 23 NY3d 871 [2014]). Defendant's conviction for securities fraud will not be disturbed in view of the evidence that defendant represented to victim A that he owned shares of the limited liability company — shares that defendant did not have — and that victim A gave defendant money based on this representation and the offer by defendant that victim A would receive shares in exchange for money (see People v Thomas, 55 AD3d 357, 359 [2008], lvs denied 12 NY3d 783, 785, 788 [2009]).[FN1] The convictions for offering a false instrument for filing in the first degree and criminal tax fraud in the fourth degree are also supported by the weight of the evidence. In this regard, the trial evidence showed that defendant did not report income from victim A on his tax return and then failed to submit any tax returns in a separate year (see Penal Law § 175.35 [1]; Tax Law § 1803; see generally People v Bleakley, 69 NY2d 490 [1987]).
Regarding defendant's request to sever his trial from that of the codefendant, Supreme Court did not abuse its discretion in denying his omnibus motion to the extent that it sought this relief. "'[W]here proof against the defendants is supplied by the same evidence, only the most cogent reasons warrant a severance'" (People v Mahboubian, 74 NY2d 174, 183 [1989], quoting People v Bornholdt, 33 NY2d 75, 87 [1973], cert denied 416 US 905 [1974]). As the court found, defendant failed to show that there was an irreconcilable conflict between his defense and the codefendant's defense. In this regard, defendant portrayed the victims as savvy businesspeople and argued that the money he obtained from them was used for legitimate purposes and projects that ultimately failed. Meanwhile, the thrust of the codefendant's defense was that he believed that the money that was wired to his account was being used legitimately by defendant. Defendant further contends that some of the comments by the codefendant's counsel during summation tended to denigrate defendant. Some degree of hostility and prejudice, however, exists in every joint trial (see People v Rivera, 128 AD3d 473, 474 [2015], lv denied 27 NY3d 1005 [2016]; People v Jean-Pierre, 169 AD2d 932, 934 [1991], lv denied 77 NY2d 962 [1991]). Because defendant failed to show that any unfair prejudice substantially impaired his defense, the court did not abuse its discretion in denying that part of the omnibus motion seeking separate trials (see People v Murray, 155 AD3d 1106, 1109 [2017], lv denied 31 NY3d 1015 [2018]; People v Cordato, 85 AD3d 1304, 1308-1309 [2011], lv denied 17 NY3d 815 [2011]; People v Thompson, 79 AD3d 1269, 1272 [2010]).
Defendant argues that Supreme Court erred in its Molineux/Ventimiglia ruling. Specifically, the People sought to admit, and defendant [*5]moved to preclude, evidence of the underlying facts pertaining to the prior convictions to which defendant pleaded guilty. As the court found, such evidence was inextricably interwoven with the charged crimes and was relevant to the issues of intent and to show a common scheme or plan (see People v Latnie, 180 AD3d 1238, 1243 [2020]; People v Athanasatos, 40 AD3d 1263, 1265 [2007], lv denied 9 NY3d 872 [2007]). In this regard, this evidence was relevant to the charged crimes by showing that defendant intended to solicit money from the victims under false pretenses so that he could satisfy his personal debts and restitution payments. Although the court's ruling did not explicitly balance the probative value of such evidence against the potential prejudice to defendant, arguments were entertained on this point at the pretrial hearing and, therefore, such balancing was implicit in the ruling (see People v Brown, 128 AD3d 1183, 1186 [2015], lv denied 27 NY3d 993 [2016]; People v Meseck, 52 AD3d 948, 950 [2008], lv denied 11 NY3d 739 [2008]). Furthermore, any prejudice was minimized based upon the court's limiting instruction during the final charge (see People v Bailey, 32 NY3d 70, 83-84 [2018]). To the extent that defendant argues that the People exceeded the court's ruling, such argument is unpreserved (see People v Iovino, 149 AD3d 1350, 1354 [2017], lv denied 30 NY3d 950 [2017]). Defendant's argument that the prosecutor improperly commented on his prior convictions during summation is also unpreserved in the absence of an objection to the challenged remarks (see People v Planty, 155 AD3d 1130, 1133 [2017], lv denied 30 NY3d 1118 [2018]).
Defendant contends that the grand jury proceeding was defective because the People impermissibly introduced evidence of his prior convictions therein. As mentioned, however, the evidence of defendant's prior convictions was relevant to show defendant's intent and was inextricably intertwined with the charged crimes (see People v Mujahid, 45 AD3d 1184, 1185-1186 [2007], lv denied 10 NY3d 814 [2008]). Dismissal of the indictment is warranted only when there is "prosecutorial [misconduct], fraudulent conduct or errors [that] potentially prejudice the ultimate decision reached by the grand jury" (People v Boddie, 126 AD3d 1129, 1130 [2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 1085 [2015]; see People v Farley, 107 AD3d 1295, 1295 [2013], lv denied 21 NY3d 1073 [2013]; People v Moffitt, 20 AD3d 687, 688 [2005], lv denied 5 NY3d 854 [2005]). Because none exists here, and taking into account that any prejudice was ameliorated based upon the prosecutor's limiting instructions to the grand jury, Supreme Court did not err in denying that part of defendant's omnibus motion seeking dismissal of the indictment on the basis of a defective grand jury proceeding (see People v Mujahid, 45 AD3d at 1185-1186).
Finally, Supreme Court's summary denial of defendant's CPL article 440 motion was [*6]correct. Contrary to defendant's assertion, the Attorney General had authority to prosecute this case (see People v Rogers, 157 AD3d 1001, 1002 [2018], lv denied 30 NY3d 1119 [2018]). Defendant's assertion that the Attorney General improperly obtained grand jury information related to his prior convictions was supported by only conclusory, self-serving allegations (see People v Beverly, 196 AD3d 864, 865 [2021], lv denied 37 NY3d 1058 [2021]). Defendant's remaining arguments, to the extent not specifically discussed herein, have been examined and are without merit.
Garry, P.J., Clark, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the judgments are modified, on the law, by reversing defendant's conviction of grand larceny in the fourth degree under count 6 of the indictment; said count dismissed and the sentence imposed thereon vacated; and, as so modified, affirmed.
ORDERED that the order is affirmed.



Footnotes

Footnote 1: To the extent that defendant argues that the securities fraud charge should have been dismissed as barred by the statute of limitations, such argument is unpreserved (see People v Atkinson, 84 AD3d 973, 973 [2011], lv denied 17 NY3d 813 [2011]).