People v Latnie (2020 NY Slip Op 01405)





People v Latnie


2020 NY Slip Op 01405


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

109357

[*1]The People of the State of New York, Respondent,
v
Zacharia Latnie, Appellant.

Calendar Date: January 17, 2020

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Colangelo, JJ.


Theodore J. Stein, Woodstock, for appellant.
P. David Soares, District Attorney, Albany (Jonathan P. Catania of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered March 23, 2017, upon a verdict convicting defendant of the crimes of attempted grand larceny in the first degree (two counts), burglary in the third degree (two counts), possession of burglar's tools, conspiracy in the fourth degree, tampering with public records in the first degree (three counts), offering a false instrument for filing in the first degree (three counts) and falsifying business records in the first degree (three counts).
In December 2014, defendant — along with his codefendants Delyn Latnie and Kazia Latnie — was indicted for various crimes stemming from his involvement in a scheme to fraudulently obtain an ownership interest in a vacant commercial property in the Town of Colonie, Albany County. Defendant's trial was severed from that of his codefendants and, following a jury trial, he was found guilty of 15 of the 21 crimes charged against him. Specifically, defendant was convicted of two counts of attempted grand larceny in the first degree, two counts of burglary in the third degree, one count of possession of burglar's tools, one count of conspiracy in the fourth degree, three counts of tampering with public records in the first degree, three counts of offering a false instrument for filing in the first degree and three counts of falsifying business records in the first degree. Defendant was thereafter sentenced to concurrent prison terms of 2&frac13; to 7 years on each conviction of attempted grand larceny in the first degree and burglary in the third degree and to lesser concurrent prison terms on the remaining convictions. Defendant appeals.
Defendant argues that his convictions for attempted grand larceny in the first degree are not supported by legally sufficient evidence because the People failed to establish — "by the requisite quantum of proof" — that the value of the commercial property exceeded $1 million, as required by Penal Law § 155.42. However, inasmuch as defendant's motion for a trial order of dismissal was not premised upon this specific ground, defendant failed to preserve his legal sufficiency challenge to these convictions (see People v Novak, 148 AD3d 1352, 1353 [2017], lv denied 29 NY3d 1084 [2017]; People v Andrews, 127 AD3d 1417, 1419 [2015], lv denied 25 NY3d 1159 [2015]).
Defendant also raises legal sufficiency challenges with respect to his convictions for burglary in the third degree and possession of burglar's tools. To convict defendant of the two counts of burglary in the third degree, as that crime was charged in the indictment, the People had to establish that, on August 15, 2014 and November 28, 2014, defendant "knowingly enter[ed] or remain[ed] unlawfully in [the subject] building with intent to commit a crime therein" (Penal Law § 140.20). Defendant's intent to commit a crime may be inferred from his actions and the overall circumstances, including his actions and statements when confronted by police (see People v Spencer, 152 AD3d 863, 864 [2017], lv denied 30 NY3d 983 [2017]; People v Morrison, 127 AD3d 1341, 1342 [2015], lv denied 26 NY3d 932 [2015]). For the two counts of possession of burglar's tools, the People had to prove that defendant "possesse[d] a[] tool, instrument or other article adapted, designed or commonly used for committing or facilitating offenses involving forcible entry into premises, or offenses involving larceny by a physical taking . . . under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character" (Penal Law § 140.35).
At trial, the jury was presented with evidence, including testimony given by defendant during his own defense, that, over a period of roughly five months, while the property was the subject of a foreclosure proceeding, defendant engaged in a series of steps designed to create the appearance that he had a valid ownership interest in the property. Defendant's friend, who testified on behalf of the People, as well as defendant, testified that defendant's actions were inspired by and modeled after a procedure outlined in an e-book that defendant had purchased, entitled "Home for Free." The jury heard testimony that, as part of that procedure, defendant created the Suburban Restoration Workgroup Trust and the Latnie Family Trust, that defendant notified the owner of the building of his intention — as a trustee of the Suburban Restoration Workgroup Trust — to perform unsolicited yardwork on the property and that defendant thereafter performed and billed the owner for that work. The jury was also presented with testimonial and documentary evidence showing that, when the bill went unpaid, defendant filed various documents that he drafted, including a special warranty deed, with the Albany County Clerk's office claiming that the Suburban Restoration Workgroup Trust had acquired an ownership interest in the property as a result of the unpaid bill and that the Suburban Restoration Workgroup Trust had transferred its purported interest to the Latnie Family Trust, of which defendant was also a trustee.
Defendant's friend and defendant consistently testified that, on August 15, 2014, after the documents were filed with the Albany County Clerk's office, defendant, defendant's friend and defendant's brother — codefendant Delyn Latnie — visited the property for the purpose of taking pictures of the interior for prospective buyers. Defendant specifically testified that his "ultimate aim that day[,] in addition to taking possession of the property, was to take pictures of the inside." Both defendant and his friend testified that defendant's brother gained access into the property through the roof and then let them into the building through a back door. The uncontested testimony established that the police thereafter responded to a report of suspicious activity at the property and that, during the ensuing police encounter, defendant held himself out as the owner of the property and produced the special warranty deed that he had drafted as proof of his ownership claim. As demonstrated by the undisputed evidence, the police thereafter seized the deed produced by defendant to investigate and verify defendant's claim of ownership. Testimony from the investigating police officers established that, in the days following August 15, 2014, the police determined that the building was owned by Comerica Bank as a result of a judgment of foreclosure and that defendant and his companions did not have permission to be on the premises.[FN1] Defendant was subsequently arrested, charged with criminal trespass in the third degree and advised not to return to the property.
The People presented evidence that, less than two weeks after defendant's arrest, defendant's sister — codefendant Kazia Latnie — hired a locksmith to change the locks to the building. The locksmith testified that he was assigned a work ticket to gain access to the property and create keys for the door. He stated that he met Kazia Latnie at the property on August 28, 2014 and, after being presented with her identification and the special warranty deed created by defendant, he replaced the locks and provided her with keys to the building. The People also presented testimony from Comerica Bank's attorney and the owner of Trinity Realty Group, whose testimony together established that Comerica Bank conducted a foreclosure sale in early November 2014, that Trinity was awarded the sale contract as the highest bidder and that the sale ultimately closed in December 2014. Trinity's owner testified that, following the foreclosure sale, he received a threatening email from Kazia Latnie to remove a sign that he had installed on the property because it was impeding upon her ability to market the property, that he had to replace the sign several times because it was removed without his permission and that he received a threatening phone call from an anonymous male caller stating that the trust would pursue civil action if the sign was not removed.
The People further presented testimony from a police officer and a detective sergeant who responded to a report of a suspected burglary in progress at the property on November 28, 2014. The police officer and detective sergeant consistently testified that, based upon the description of the suspects seen exiting the building, defendant and Kazia Latnie were stopped not far from the property, at which point defendant stated that they owned the building and that he had keys to it. The detective sergeant testified that defendant turned over the keys and, with defendant's permission, he took the keys to the property and confirmed that they did in fact fit the building's doors. During his testimony, defendant admitted to entering the property on November 28, 2014 and stated that he showed the property to a prospective buyer — a man named Eddie, who he understood to be "a wholesale buyer[] of abandoned properties and/or as-is condition properties."
Contrary to defendant's contention, the evidence was legally sufficient to establish that he had the requisite intent to commit a crime when he entered the building on August 15, 2014 and November 28, 2014. By defendant's own testimony, the purpose of the August 15, 2014 entry into the building was to take physical possession of the property and to take photographs of the interior for prospective buyers. Although taking photographs is not a criminal act in and of itself, testimony from defendant and defendant's friend revealed that the taking of photographs was in furtherance of defendant's overall scheme to market and sell the property, to which he did not have title. Defendant's testimony demonstrated that his November 28, 2014 entry into the building was also in furtherance of this scheme. Accordingly, viewing the evidence in the light most favorable to the People (see People v Jones, 32 NY3d 1146, 1148 [2018]), we find that there was a valid line of reasoning and permissible inferences that could lead a rational jury to conclude that defendant knowingly and unlawfully entered the building on August 15, 2014 and November 28, 2014 with the intent to commit a crime therein (see Penal Law § 140.20; People v Shamsuddin, 167 AD3d 1334, 1335 [2018], lv denied 33 NY3d 953 [2019]).
As for his conviction for possession of burglar's tools, defendant asserts that neither of the items he was charged with possessing — keys to the building and the special warranty deed purporting to give the Latnie Family Trust an ownership interest in the building — qualify as a "tool, instrument or other article adapted, designed or commonly used for committing or facilitating . . . offenses involving larceny by a physical taking . . . under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character" (Penal Law § 140.35). We are unpersuaded. Viewed in the light most favorable to the People, a valid line of reasoning and permissible inferences exists to support the rational conclusion that the special warranty deed and the keys — having been fraudulently obtained by deceiving a locksmith — were instruments or articles designed to facilitate his overall scheme to take hostile possession of, and sell, a property that he did not own (see Penal Law § 140.35; see generally People v Borrero, 26 NY2d 430, 434-436 [1970]; compare People v Baer, 96 AD2d 717, 717-718 [1983]). Thus, we find that defendant's conviction for possession of burglar's tools is supported by legally sufficient evidence.
Defendant further argues that County Court erred in permitting evidence regarding defendant's alleged or suspected affiliation with the sovereign citizen movement. We, however, find that County Court did not abuse its discretion in admitting this evidence. As the court held, the challenged evidence was inextricably interwoven into the facts of the case, provided necessary background information, completed the witnesses' narratives and was probative of defendant's motive and intent (see People v Anthony, 152 AD3d 1048, 1051 [2017], lvs denied 30 NY3d 978, 981 [2017]; People v Johnson, 106 AD3d 1272, 1274 [2013], lvs denied 21 NY3d 1043, 1045, 1046 [2013]). Furthermore, although a balancing of the evidence's probative value against its potential for prejudice is not expressly reflected in County Court's pretrial ruling on the matter, as it should have been, we find that County Court implicitly engaged in the requisite balancing test here, given its preclusion of other proffered Molineux evidence for being more prejudicial than probative (see People v Pigford, 148 AD3d 1299, 1302 [2017], lv denied 29 NY3d 1085 [2017]; People v Scaringe, 137 AD3d 1409, 1417 [2016], lv denied 28 NY3d 936 [2016]).[FN2]
Defendant failed to preserve his remaining argument that the three counts of tampering with public records in the first degree (as charged in counts 7, 10 and 13 of the indictment), as well as the three counts of offering a false instrument for filing in the first degree (as charged in counts 8, 11 and 14 of the indictment), are multiplicitous (see People v Allen, 24 NY3d 441, 449-450 [2014]; People v Box, 145 AD3d 1510, 1512-1513 [2016], lv denied 29 NY3d 1076 [2017]). To the extent that we have not addressed any of defendant's arguments, they have been reviewed and found to be without merit.
Garry, J.P., Egan Jr., Mulvey and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: An employee of Fidelity National Title and Chicago Title Insurance Company testified that she performed a title search for the property and was unable to find a conveyance of the property to the Suburban Restoration Workgroup Trust.

Footnote 2: County Court did not properly instruct the jury — at the time such evidence was presented to the jury or during its final charge — of the appropriate purpose of the evidence. However, defendant failed to preserve this issue (see People v Burnell, 89 AD3d 1118, 1121 [2011], lv denied 18 NY3d 922 [2012]; People v Tyrell, 82 AD3d 1352, 1356 [2011], lv denied 17 NY3d 810 [2011]). Were the issue preserved, we would find that the court erred in this regard, but that the error was harmless, considering the overwhelming evidence of defendant's guilt (see People v Lindsey, 75 AD3d 906, 908 [2010], lv denied 15 NY3d 922 [2010]).