People v Marcantonio (2025 NY Slip Op 02821)

People v Marcantonio

2025 NY Slip Op 02821

Decided on May 8, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 8, 2025

112576
[*1]The People of the State of New York, Respondent,
v
Joshua Marcantonio, Appellant.

Calendar Date:March 24, 2025

Before:Garry, P.J., Clark, Lynch, Fisher and Powers, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
Jason M. Carusone, District Attorney, Lake George (Robert P. McCarty of counsel), for respondent.

Garry, P.J.
Appeal from a judgment of the County Court of Warren County (Kelly McKeighan, J.), rendered February 21, 2020, upon a verdict convicting defendant of the crimes of attempted burglary in the first degree (three counts), reckless endangerment in the first degree, criminal possession of a weapon in the third degree, criminal mischief in the third degree, criminal mischief in the fourth degree and overdriving, torturing and injuring animals.
In May 2019, defendant and the victim crossed paths at a grocery store. Defendant, then 31 years old, had been longtime friends with the victim's son, who was soon to be released following a lengthy period of incarceration. The victim invited defendant to his home that evening to catch up, and defendant took him up on the offer. Their descriptions of the events that evening and into the early morning hours differ in significant ways. According to the victim, defendant demonstrated certain bizarre, but largely characteristic, behaviors, which ultimately prompted the victim to ask defendant to leave and to toss the items that defendant brought with him, including a shotgun, out of the house. Defendant allegedly fired that shotgun at the victim's front door thereafter, barely missing the victim and killing a family dog. Damage to the door thwarted defendant's subsequent attempt to open it. For his conduct, defendant was charged by indictment with three counts of attempted burglary in the first degree, and one count each of reckless endangerment in the first degree, criminal possession of a weapon in the third degree, criminal mischief in the third degree, criminal mischief in the fourth degree and overdriving, torturing and injuring animals. A jury convicted defendant as charged, and County Court sentenced him to three concurrent prison term of 15 years for the attempted burglary convictions, to be followed by five years of postrelease supervision, and to lesser concurrent terms of incarceration on the remaining counts. Defendant appeals.
Defendant first argues that his attempted burglary and weapon possession convictions are legally insufficient and against the weight of the evidence. The legal sufficiency argument is not properly before us. Although defendant requested permission to make a renewed motion for a trial order of dismissal at the close of all proof, the limited argument that ensued was not addressed to the convictions that he now challenges (see People v Morris, 126 AD3d 1370, 1371 [4th Dept 2015], lv denied 26 NY3d 932 [2015]). In light of that argument, we do not view the question posed by counsel as itself effecting renewal of the prior motion in full (see generally People v Kolupa, 13 NY3d 786, 787 [2009]). Nevertheless, our assessment of defendant's weight of the evidence argument requires that we confirm that the People proved each element of the challenged convictions beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349-350 [2007]; People v Cahill, 2 NY3d 14, 57-58 [2003]; see also [*2]People v Baque, 43 NY3d 26, 29-30 [2024]). In doing so, this Court affords "[g]reat deference . . . to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Baque, 43 NY3d at 30; People v Romero, 7 NY3d 633, 644-645 [2006]).
As for counts 1 through 3, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). As charged here, "[a] person is guilty of burglary in the first degree when he [or she] knowingly enters . . . a dwelling with intent to commit a crime therein, and when, in effecting entry . . . , he [or she] . . . [i]s armed with . . . a deadly weapon" (Penal Law § 140.30 [1]), "[u]ses or threatens the immediate use of a dangerous instrument" (Penal Law § 140.30 [3]) or "[d]isplays what appears to be a . . . shotgun" (Penal Law § 140.30 [4]). A person is guilty of criminal possession of a weapon in the third degree when he or she possesses a dangerous or deadly instrument or weapon with intent to use the same unlawfully against another and has been previously convicted of any crime (see Penal Law § 265.02 [1]; see also Penal Law § 265.01 [2]).
The testimony of the victim and defendant were generally in alignment with respect to their meeting and the earlier part of the evening in question, at which time they watched movies, spoke with the victim's son on the phone and went to a store. Defendant eventually asked if he could spend the night if he had some wine. The victim agreed, and defendant stopped by his house to get wine and some other items to bring back with him; there is no dispute that those items included a shotgun, ammunition and several knives, among other things. Each offered detailed accounts of the ensuing hours that were inconsistent in a number of ways, but the discrepancy between them ultimately came down to who instigated the physical violence between them and who fired the shotgun. According to the victim, defendant, in a failed attempt at humor, repeatedly hit the victim in the face after he had fallen asleep on the couch. When the victim asked defendant to leave as a result, tossing his belongings onto the front porch, defendant exited only to return with the shotgun, firing a shot at the door and attempting to open it before fleeing. According to defendant, he had embarrassed the victim when he caught him smoking crack cocaine, to which the victim was admittedly previously addicted, and that drug use, embarrassment and other topics of conversation regarding the victim's son caused the victim to become enraged and violent, prompting defendant to flee the residence on his own accord. Defendant testified that the victim began throwing defendant's belongings onto the porch, including a knife that cut the victim. The victim then allegedly followed defendant onto the porch with the shotgun in [*3]hand, closed the door behind him, and, during an ensuing scuffle, toppled backwards, causing the gun to accidentally discharge.
Both the victim and defendant have criminal histories, and both men admitted to having used substances — marihuana and alcohol, respectively — in the hours leading up to the subject incident. The victim sustained no injuries to his face, and defendant was bleeding heavily from his right forearm when discovered by police. Other occupants of the residence also testified, as did the victim's duplex neighbors. Those individuals, poised to hear a violent conflict in the house's living room, generally recounted hearing nothing prior to the shotgun blast. Ballistics evidence established that the shot to the door, positioned precisely between the door knob and deadbolt, was direct, from close proximity and at an angle consistent with someone coming up the porch steps. It was also established that the damage to the door prevented it from being opened. DNA evidence suggested that the only person who handled the shotgun and knives was defendant. The victim's 911 call and body camera footage from a responding officer familiar with defendant captured the victim's reaction to the incident, as well as defendant's condition when he was apprehended.
Given the witness credibility issues presented, another verdict would not have been unreasonable (see People v Danielson, 9 NY3d at 349). We reject defendant's assertion that there was no evidence that he intended to re-enter the residence at all. Beyond the jiggling and turning door knob witnessed by the victim immediately following the shotgun shot, it is well established that intent can be inferred from the circumstances, which includes the precise placement of the shot here (see People v Naradzay, 11 NY3d 460, 467 [2008]; People v Haynes, 177 AD3d 1194, 1195 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]). The People also did not need to prove the particular crime that defendant intended to commit once inside the dwelling (see People v Cajigas, 19 NY3d 697, 701 [2012]; People v Lewis, 5 NY3d 546, 552 [2005]). With those principles in mind, and deferring to the jury's resolution of the witnesses' credibility while evaluating the rational inferences that may be drawn from the evidence (see People v Danielson, 9 NY3d at 349), the challenged convictions are supported by the weight of the evidence (see Penal Law §§ 110.00, 140.30 [1], [3], [4]; 265.02 [1], [2]).
Defendant next contends that the attempted burglary counts of the indictment are multiplicitous (see generally People v Alonzo, 16 NY3d 267, 269 [2011]). His contention is unpreserved (see CPL 470.05 [2]; People v Latnie, 180 AD3d 1238, 1243-1244 [3d Dept 2020]; People v Valcarcel, 160 AD3d 1034, 1037 [3d Dept 2018], lv denied 31 NY3d 1088 [2018]) and, in any event, without merit as the counts required proof of distinct and independent elements (see People v Gillie, 185 AD3d 1539, 1539, 1541 [4th Dept 2020], lv denied 35 NY3d 1094 [[*4]2020]; People v Ayala, 172 AD3d 1084, 1084 [2d Dept 2019], lv denied 34 NY3d 949 [2019], cert denied ___ US ___, 141 S Ct 2771 [2021]; compare People v Barnes, 64 AD3d 890, 892-893 [3d Dept 2009], lv denied 13 NY3d 858 [2009]; see generally CPL 200.30 [2]).
We also reject the argument that defendant was deprived of his right to the effective assistance of counsel (see generally People v Benevento, 91 NY2d 708, 712-713 [1998]). Counsel will not be faulted for failing to make what likely would have been an unsuccessful motion to dismiss on multiplicity grounds (see People v Stultz, 2 NY3d 277, 287 [2004]). Defendant also has not shown the absence of any legitimate strategy in counsel's election not to object to the admission of photographs of the deceased dog, which were relevant and not graphic (see People v Barboni, 21 NY3d 393, 406 [2013]). The critique of counsel's "form motion[ ]" practice is misguided, as the motion at issue concerned the confidential grand jury proceedings; in any event, any such single failing in respect to the factual basis of a motion would not generally constitute ineffectiveness (see People v Delbrey, 179 AD3d 1292, 1298 [3d Dept 2020], lv denied 35 NY3d 969 [2020]). Similarly, defendant's reference to an alleged illness of counsel at one point during the trial and County Court's commentary on his performance around that time is entirely divorced from its context. Defendant's argument regarding counsel's decision not to call a law enforcement witness, who it seems would have offered only cumulative testimony, largely concerns matters outside of the record and is therefore more properly raised in a CPL article 440 motion (see People v Lafountain, 200 AD3d 1211, 1216 [3d Dept 2021], lv denied 38 NY3d 951 [2022]). In addition to obtaining beneficial plea offers and engaging in appropriate pretrial motion practice, counsel vigorously cross-examined witnesses, presented a viable case on defendant's behalf and delivered cogent opening and closing statements. Defendant has thus failed to meet his burden to establish that he was afforded less than meaningful representation.
Lastly, we discern no basis to reduce the lawful terms of imprisonment imposed in the face of defendant's senseless act of violence against individuals who considered him to be family (see generally CPL 470.15 [6] [b]). Defendant has failed to take responsibility for his actions. These actions occurred while he was on a term of probation and directly caused the death of a beloved pet, taking a particularly serious emotional toll on the dog's owner. The fact that the victim — his hands still on the lock when the shotgun blast came through the door — was not also killed or seriously injured was nothing other than luck.
Clark, Lynch, Fisher and Powers, JJ., concur.
ORDERED that the judgment is affirmed.